UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAINTEQ, LLC,

       Plaintiff,

v.                          Case No. 8:20-cv-2805-VMC-AAS

OMNIA MEDICAL, LLC,

       Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of
Defendant and Counterclaimant Omnia Medical, LLC's Motion to
Transfer Venue (Doc. # 21), filed on December 18, 2020.
Plaintiff and Counterclaim-Defendant PainTEQ, LLC, responded
in opposition on February 5, 2021. (Doc. # 42). For the
reasons set forth below, the Motion is denied.

**I.   Background**

PainTEQ initiated this action in state court against its
former employee, Chad Subasic, on April 8, 2020. (Doc. # 1 at
¶ 3). PainTEQ amended its complaint on June 2, 2020, adding
Omnia Medical as a defendant. (Id. at ¶ 4; Doc. # 1-1). On
October 29, 2020, PainTEQ and Subasic filed a stipulation of
dismissal, and the claims against Subasic were dismissed.
(Doc. # 1 at ¶ 5). Thereafter, on November 30, 2020, Omnia

1

Medical removed the case to this Court on the basis of diversity jurisdiction. (Doc. # 1).

On December 4, 2020, PainTEQ filed a second amended complaint, including the following claims against Omnia Medical: violation of the Florida Uniform Trade Secrets Act (Count I), tortious interference with a business relationship (Count II), tortious interference with a contractual relationship (Count III), and defamation (Count IV). (Doc. # 10). On December 18, 2020, Omnia Medical filed its answer and counterclaim. (Doc. # 20). The counterclaim includes the following causes of action against PainTEQ: patent infringement (Counts I and II), copyright infringement (Counts III and IV), trademark infringement (Counts V and VI), breach of contract (Count VII), violations of the Ohio Deceptive Trade Practices Act (Count VIII), violations of the Florida Deceptive and Unfair Trade Practices Act (Count IX), and common law unfair competition (Count X). (Id.)

PainTEQ is a Florida limited liability company with its principal place of business in Hillsborough County, Florida. (Doc. # 10 at ¶ 2). PainTEQ's members are Florida citizens. (Id.). Omnia Medical is an Ohio limited liability company with its principal place of business in West Virginia. (Id.

at ¶ 3). Omnia Medical's members are Ohio, West Virginia, and California citizens. (Id.).

On December 18, 2020, Omnia Medical moved to transfer this case to the Southern District of Ohio. (Doc. # 21). PainTEQ responded on February 5, 2021 (Doc. # 42), and the Motion is now ripe for review.

## II. **Legal Standard**

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Ordinarily, "[t]o transfer an action under [S]ection 1404(a)[,] the following criteria must be met: (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties." i9 Sports Corp. v. Cannova, No. 8:10-cv-803-VMC-TGW, 2010 WL 4595666, at *3 (M.D. Fla. Nov. 3, 2010) (citation omitted).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W.

Dist. of Tex., 571 U.S. 49, 63 (2013) (citation omitted).
"[A] valid forum-selection clause [should be] given
controlling weight in all but the most exceptional cases."
Id. (citation omitted). So, the Court "should not consider
arguments about the parties' private interests." Id. at 64.
"When parties agree to a forum-selection clause, they waive
the right to challenge the preselected forum as inconvenient
or less convenient for themselves or their witnesses, or for
their pursuit of the litigation." Id.

**III.  Analysis**

Omnia Medical seeks to have the case transferred to the
Southern District of Ohio primarily because the parties
"entered into a contractual forum selection clause that
mandates disputes between them be heard in a state or federal
court in Ohio." (Doc. # 21 at 1). Alternatively, Omnia Medical
argues that the Southern District of Ohio is a more convenient
forum under the 28 U.S.C. § 1404(a) factors. (Id. at 16). The
Court will address each basis for transfer in turn.

**A.    Forum Selection Clause**

First, Omnia Medical argues that this case should be
transferred in its entirety because of a choice of law and
forum selection clause included in the parties' Stocking

Agreement, which was executed in April 2017 and terminated in February 2019:

> This Agreement shall be construed and interpreted in accordance with the laws of the state of Ohio. All disputes under this Agreement will be resolved in the state or federal courts in Ohio.

(Doc. # 21 at 2-4). PainTEQ responds that the forum selection clause is permissive, not mandatory, and that the claims and counterclaims in this suit do not fall within the scope of the Stocking Agreement. (Doc. # 42 at 4-9).

"[T]he construction of forum selection clauses by federal courts is a matter of federal common law, not state law of the state in which the federal court sits." Cornett v. Carrithers, 465 F. App'x 841, 842 (11th Cir. 2012). "In analyzing the application of a forum-selection clause, a court must determine whether the clause is valid, whether the claim at issue falls within the scope of the clause – by looking to the language of the clause itself – and whether the clause is mandatory or permissive." Hindi v. BirdEye, Inc., No. 19-cv-61201-BLOOM/Valle, 2019 WL 4091425, at *3 (S.D. Fla. Aug. 29, 2019) (citing Bah. Sales Assoc., LLC v. Byers, 701 F.3d 1335, 1340 (11th Cir. 2012)). "If a court concludes that a valid and enforceable forum-selection clause

exists, it must conduct a *forum non conveniens* analysis to determine whether the case should be transferred." Id.

### 1.   **Mandatory or Permissive Forum Selection Clause**

Because neither party disputes that the forum selection clause is valid, the Court turns to PainTEQ's argument that the clause is permissive, not mandatory. (Doc. # 42 at 4). "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, in contrast, dictates an exclusive forum for litigation under the contract." Glob. Satellite Commc'n Co. v. Starmill U.K. Ltd., 378 F.3d 1269, 1272 (11th Cir. 2004) (internal quotation marks and citation omitted).

"The Eleventh Circuit only enforces clauses that 'unambiguously designate the forum in which the parties must enforce their rights under the contract.'" Anderson v. First Mercury Ins. Co., No. 6:19-cv-1389-PGB-EJK, 2020 WL 3316917, at *2 (M.D. Fla. Feb. 28, 2020) (quoting Fla. Polk Cnty. v. Prison Health Servs., Inc., 170 F.3d 1081, 1084 n.8 (11th Cir. 1999)). "[A] forum selection clause warrants transfer or dismissal of an action only if the language of the clause vests a particular court with exclusive jurisdiction. Id. (citing Wai v. Rainbow Holdings, 315 F. Supp. 2d 1261, 1270

(S.D. Fla. 2004)). However, "the clause need not include the word 'exclusive.'" Wai, 315 F. Supp. 2d at 1270.

Here, the forum selection clause states: "All disputes under this Agreement will be resolved in the state or federal courts in Ohio." (Doc. # 21 at 4). This clause does not merely consent to Ohio's jurisdiction. Indeed, this language does not leave open the possibility of any venue other than Ohio. Thus, the forum selection clause mandates that Ohio be the exclusive venue for disputes under the Stocking Agreement. See Essex Glob. Cap., LLC v. Purchasing Sols. Int'l, Inc., No. 17-61657-CIV-GAYLES, 2017 WL 4868801, at *1-3 (S.D. Fla. Oct. 27, 2017) (finding a clause providing "[d]isputes will be resolved by litigation in a court of competent jurisdiction in the Commonwealth of the Bahamas" mandatory); Morse v. Ten X Holdings, LLC, No. 2:17-cv-00073-JAD-CWH, 2017 WL 4079264, at *1-3 (D. Nev. Sept. 13, 2017) (finding the following forum selection clause mandatory: "[T]he venue for any legal action under this Agreement will be the proper forum in the City of Chicago, State of Illinois.").

### 2.   Scope of the Forum Selection Clause

Next, PainTEQ argues that the instant dispute does not fall within the scope of the Stocking Agreement's forum selection clause. (Doc. 42 at 5-9). "In any case involving

a forum-selection clause, the court must determine the scope
of the clause and whether it covers the particular claims
asserted." Landau v. Jaffa, No. 18-60772-CIV-GAYLES/SELTZER,
2018 WL 4778426, at *4-5 (S.D. Fla. July 19, 2018) (citation
omitted). "To determine if a claim falls within the scope of
a clause, [courts] look to the language of the clause."
Bahamas Sales, 701 F.3d at 1340. "[G]eneral contract
principles apply to [the court's] determination of the scope
of [a] forum-selection clause[.]" Turner v. Costa Crociere
S.p.A., 488 F. Supp. 3d 1240, 1246 (S.D. Fla. 2020). "Under
general contract principles, the plain meaning of a
contract's language governs its interpretation." Slater v.
Energy Servs. Grp. Int'l, Inc., 634 F.3d 1326, 1330 (11th
Cir. 2011).

Here, the forum selection clause encompasses "[a]ll
disputes under" the Stocking Agreement, which was in effect
from April 2017 to February 2019, and provided that PainTEQ
would market and sell a number of Omnia Medical's products to
surgeons in a specified territory. (Doc. # 21 at 3-4; Doc. #
20-3 at 2-3). PainTEQ's claims, however, do not arise out of
the purchase, sale, or marketing of Omnia Medical's products.
Rather, they arise out of Omnia Medical's alleged
appropriation of trade secrets related to PainTEQ's

8

intellectual property – the LinQ posterior joint fusion procedure — a medical procedure not subject to the Stocking Agreement. (Doc. # 10 at ¶¶ 9, 23-24). Additionally, the alleged torts related to Omnia Medical's hiring of PainTEQ's former employees occurred after termination of the Stocking Agreement and are again related to a procedure not subject to the Stocking Agreement. (Doc. # 10 at ¶¶ 61-62, 69-70, 73-74). Finally, PainTEQ's defamation claim maintains that Omnia Medical's employees made statements to third parties that PainTEQ was infringing upon Omnia Medical's patents. (Id. at ¶¶ 114-15). Again, this claim would not require interpretation of the Stocking Agreement.

The Court finds the discussion in Thunder Marine, Inc. v. Brunswick Corporation, No. 8:06-cv-384-EAK-EAJ, 2006 WL 1877093 (M.D. Fla. July 6, 2006), helpful. There, the parties entered into an agreement including a similar forum selection clause. Id. at *6-7. That agreement dealt with a venture between the parties for the sale of marine products. Id. at *7. The defendant then sought to enforce that provision with regard to a dispute over a wholly separate venture between the same parties involving the "the purchase and development of waterfront real estate." Id. at *7. The Court found that, despite the parties' previous agreement and business

9

relationship, the forum selection cause did not cover the scope of the dispute over the second venture – even if the second venture might not have arisen but for the business relationship established with the initial agreement. Id. at *7-8. Here, although PainTEQ and Omnia Medical entered into an agreement regarding the Omnia Medical's procedure or goods, that agreement is wholly separate from PainTEQ's decision to develop and sell a new procedure. Indeed, even more apparent than in Thunder Marine, there is no business relationship between PainTEQ and Omnia Medical in distributing, marketing, or developing the LinQ procedure. The Stocking Agreement does not discuss the LinQ posterior joint fusion procedure, nor does in envision the creation thereof. (Doc. # 20-3). Accordingly, PainTEQ's claims arising out of its sale and development of the LinQ procedure, and Omnia Medical's later alleged misappropriation of that procedure, are not within the scope of the Stocking Agreement's forum selection clause.

Omnia Medical's counterclaims, however, fall within the scope of the forum selection clause. Counts I, II, III, IV, V, and VI, are all claims for infringement of Omnia Medical's intellectual property, which were obtained by virtue of the business relationship set out in the Stocking Agreement.

(Doc. # 20 at ¶¶ 19-88). Unlike the procedure developed by PainTEQ following and separate from the Stocking Agreement, Omnia Medical's products were central to the agreement. (Doc. # 20-3). Indeed, Paragraph 10 of the Stocking Agreement provides that patents and other intellectual property provided *during the course of the agreement* must remain confidential. (Id. at 4). Count VII is a claim for breach of the Stocking Agreement. (Id. at ¶¶ 106-12). Finally, Counts VII, IX, and X allege various torts related to Omnia Medical's intellectual property – which, again, would have been obtained by PainTEQ by virtue of the Agreement.

In sum, the Court finds that PainTEQ's claims do not fit within the scope of the Stocking Agreement's forum selection clause. Omnia Medical's counterclaims, however, do fit within the clause's scope.

### 3.   Forum Non Conveniens

"When there is a valid forum-selection clause, the court no longer considers the *forum non conveniens* private interest factors." Landau, 2018 WL 4778426, at *5. Instead, "a district court may consider arguments about public-interest factors only." Atlantic Marine, 571 U.S. at 64. "What remains under this modified analysis, then, is (1) whether an adequate alternative forum is available, and (2) whether the public

interest factors weigh in favor of dismissal." Essex Global, 2017 WL 4868801, at *3.

However, the law is unclear as to whether a case in which only counterclaims fall within the scope of a forum-selection clause – and not the claims in the underlying suit – can require transfer of the entire suit under Atlantic Marine. See infra Part III.A.3.b (discussing the lack of clear guidance following Atlantic Marine). Even considering the public interest factors alone, however, the Court finds that they weigh against transfer.

### a.   Adequate Alternative Forum

"An alternative forum is adequate if it provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiffs' injuries." King v. Cessna Aircraft Co., 562 F.3d 1374, 1382 (11th Cir. 2009). "An adequate forum need not be a perfect forum." Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1283 (11th Cir. 2001). Here, the parties do not dispute that the Southern District of Ohio is an adequate alternative forum, and the Court therefore concludes that this inquiry is satisfied. See Landau, 2018 WL 4778426, at *5 ("The parties do not dispute that Utah is an adequate alternative forum, and the undersigned concludes that it is.").

12

### b.   **Public Interest Factors**

Next under the Atlantic Marine modified analysis, courts determine whether the public interest factors - as opposed to private interest factors - comport with transfer. Vanderham v. Brookfield Asset Mgmt., Inc., 102 F. Supp. 3d 1315, 1320 (S.D. Fla. 2015). Importantly, it is unclear whether courts must follow this analysis when there are multiple claims in a case that do not fall within the scope of a forum selection clause. See Stephen A. Sachs, Five Questions After Atlantic Marine, 66 Hastings L.J. 762, 771-73 (2015) (discussing the trouble of applying Atlantic Marine to cases with claims that do not all fall within the scope of a forum selection clause); see also In re Bavaria Yachts USA, LLLP, 575 B.R. 540, 562 (Bankr. N.D. Ga. 2017) ("Courts have noted that the holding of Atlantic Marine is based on its facts: one plaintiff, one defendant and all of the claims – not just some – being subject to the forum selection clause[.]"); Ashley Furniture Indus., Inc. v. Packaging Corp. of Am., 275 F. Supp. 3d 957, 963 (W.D. Wis. 2017) ("[T]he Supreme Court left important questions unanswered, including '[i]f the [forum selection] clause applies to only some parties or claims but not others, how should the court review a transfer motion?'" (citation omitted)); cf. Stiles v. Bankers Healthcare Grp., Inc., 637

F. App'x 556, 562 (11th Cir. 2016) ("Having decided that *all of Plaintiff's claims* are covered by the forum-selection clause, we turn to the *forum non conveniens* analysis." (emphasis added)). Still, even considering only public interest factors, the Court declines to transfer the entire case to the Southern District of Ohio.

When there is a valid, mandatory forum selection clause, courts consider the following non-exhaustive public interest factors: (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized controversies decided at home"; and (3) "the interest in having the trial of a diversity case in a forum that is at home with the law." Pappas v. Kerzner Int'l Bah. Ltd., 585 F. App'x 962, 967 (11th Cir. 2014) (per curiam) (quoting Atlantic Marine, 571 U.S. at 62 n.6). "[C]ourts have also considered judicial economy in the analysis of weighing the public interest." In re Bavaria, 575 B.R. at 562 (citing Bollinger Shipyards Lockport v. Huntington Ingalls Corp., No. 08-4578, 2015 WL 65298, at *4 (E.D. La. Jan. 5, 2015)). "The party opposing venue in the forum specified in the forum selection clause 'bear[s] the burden of showing that public-interest factors overwhelmingly disfavor' litigating the case in the forum set by the forum selection clause." Ideal Protein

14

of Am., Inc. v. Allife Consulting, Inc., No. 8:19-cv-654-VMC-CPT, 2019 WL 2358832, at *6 (M.D. Fla. June 4, 2019) (citation omitted).

In arguing against transfer, PainTEQ contends that Omnia Medical's counterclaims are meritless and were "merely [pled] to facilitate transfer." (Doc. # 42 at 8). Indeed, absent Omnia Medical's counterclaims, this case would not be transferred under the Stocking Agreement's forum selection clause. As to the first public interest factor – administrative difficulties flowing from court congestion – courts in the Middle District of Florida, on average, resolve civil cases three to four months faster than those in the Southern District of Ohio. According to the U.S. Courts' website, the median time from filing to disposition of a civil case in the Middle District of Florida in 2020 was 6.2 months. Table C-5 – U.S. District Courts – Civil Statistical Tables for the Federal Judiciary (December 31, 2020), available at https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2020/12/31. The median time in the Southern District of Ohio was 9.6 months. Id. Because this difference is not significant, the Court finds that this factor is neutral or slightly favors keeping the case in this District.

Next, regarding the local interest in having localized controversies decided at home, this factor is neutral. Omnia Medical concedes that "local interest may be found in both this Court and the Southern District of Ohio." (Doc. # 21 at 15). Omnia Medical posits that Ohio's interest is stronger because "Ohio law applies to all state claims arising out of the Stocking Agreement" and because Omnia Medical is an Ohio entity. (Id. at 15-16). However, as the Court has already noted, PainTEQ's claims do not fall within the scope of the Stocking Agreement, and Omnia Medical's intellectual property claims arise under federal law. Therefore, it is unclear whether Florida or Ohio law applies to the state law claims. (Doc. # 10 at ¶ 2). As to the interest in having a diversity case tried in a forum where it is at home with the law, the court has already noted that it is unclear in this case whether Florida or Ohio law applies to a number of the claims herein. In any case, both possible forums "are federal district courts familiar with applying state law when sitting [in] diversity." CajunLand Pizza, LLC v. Marco's Franchising, LLC, No. 19-10366, 2020 WL 1157613, at *13 (E.D. La. Mar. 10, 2020). Accordingly, these two public interest factors are neutral.

With regard to judicial economy, courts have looked to the number of claims subject to the scope of the mandatory forum selection clause relative to the total number of claims. See, e.g., In re Bavaria Yachts, 575 B.R. at 562 ("Therefore, six or seven or more claims would remain before this Court even if the remainder were dismissed by this Court, which is half or more of the claims in the Amended Complaint. Judicial economy favors litigating these claims together[.]"); Eastcott v. McGraw-Hill Glob. Educ. Holdings, LLC, No. 16-904, 2016 WL 3959076, at *1 (E.D. Pa. July 22, 2016) (declining to enforce a forum selection clause because only a small percent of the total claims fell within the clause's scope); In re TFT-LCD (Flat Panel) Antitrust Litig., No. M 07-1827 SI, 2014 WL 1477748, at *2 (N.D. Cal. Apr. 14, 2014) ("The Court agrees with plaintiffs that enforcing the forum selection clause under these circumstances would contravene federal policy in favor of 'efficient resolution of controversies.'" (citation omitted)).

Given that none of PainTEQ's claims – which comprise the underlying suit and have been pending since they were first filed in state court in April 2020 – fall within the scope of the mandatory forum selection clause, the Court finds that fairness and judicial economy weigh heavily against transfer

of the entire case. In spite of the forum selection clause, Omnia Medical filed its counterclaims in this forum in December 2020. Although these counterclaims fall within the scope of the clause and are more numerous than PainTEQ's claims, the Court believes that because the underlying suit falls outside the scope of the clause, it would be patently unfair to require PainTEQ to litigate its claims elsewhere. If Omnia Medical wished to abide by the forum selection clause, it could have filed its counterclaims as a separate lawsuit in the Southern District of Ohio. Its decision not to do so should not compel transfer of PainTEQ's suit.

Additionally, neither party has moved for severance of the counterclaims, such that they could be separately transferred to the Southern District of Ohio. The Court is disinclined to sever and transfer the counterclaims without the benefit of the parties' positions, although this relief is within the Court's power. See Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."). Accordingly, the Motion is denied as to Omnia Medical's request for enforcement of the Stocking Agreement's forum selection clause as to the entire case.

**B.     Traditional Section 1404(a) Analysis**

Omnia Medical argues that, even if the Court finds transfer inappropriate under the forum selection clause, the case should be transferred to the Southern District of Ohio under the 28 U.S.C. § 1404(a) factors. (Doc. # 21 at 16). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district to which all parties have consented." 28 U.S.C. § 1404(a).

Transfer is appropriate under Section 1404(a) only if the following criteria are met: "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties." Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc., No. 8:18-cv-2147-VMC-SPF, 2018 WL 8369104, at *3 (M.D. Fla. Sept. 20, 2018) (citation omitted). "Because federal courts ordinarily accord deference to a plaintiff's choice of forum, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice." Solis v. Seibert, No. 8:09-cv-1726-VMC-AEP, 2010 WL 1408429, at *2 (M.D. Fla. Apr. 5, 2010) (citation omitted).

Here, it appears uncontested that the action could have been brought in the Southern District of Ohio. (Doc. # 42 at 9-17). Regarding the two other elements, the Eleventh Circuit has outlined the following factors to be considered:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Testa v. Grossman, No. 5:15-cv-321-JSM-PRL, 2015 WL 6153743, at *2 (M.D. Fla. Oct. 19, 2015) (citing Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)). "A basic principle under [Section] 1404(a) is that the plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media Inc., 761 F. Supp. 2d 1322, 1326 (M.D. Fla. 2010) (internal quotation marks and citation omitted). Having already considered the public interest factors and finding them neutral or weighing heavily against transfer, the Court turns to the private interest factors.

### 1.    **Convenience of the Witnesses**

Regarding the first factor, "the critical determination . . . is the convenience of the forum to key non-party witnesses on a defendant's liability." Weintraub v. Advanced Corr. Healthcare, Inc., 161 F. Supp. 3d 1272, 1280 (N.D. Ga. 2015). However, "[t]he significance of this factor is diminished when the witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party." SMA Portfolio Owner, LLC v. CPX Tampa Gateway OPAG, LLC, No. 8:11-cv-1925-SDM-EAJ, 2014 WL 4791997, at *6 (M.D. Fla. Sept. 22, 2014) (internal quotation marks and citation omitted).

Here, Omnia Medical argues that "the convenience of witnesses factor weighs in favor of transfer to Ohio – or, at a minimum, does not weigh in favor of Florida" because a "majority of the witnesses that both parties will likely call . . . are located outside of Florida." (Doc. # 21 at 17). Specifically, Omnia Medical avers that a number of its sales representatives are located in New Jersey, Oklahoma, and Arizona. (Id.). Additionally, Omnia Medical's chief financial officer resides in Ohio. (Id.). Omnia Medical avers that both parties' customers are located throughout the country and may be called as witnesses. (Id.). PainTEQ counters, however,

that "Omnia offers no statements, affidavits, or other evidence that any such witnesses would be inconvenienced if venue remains in Florida. Instead, and as Omnia concedes, a Florida-based sales representative is located in Florida, as are at least three of the potential witnesses identified by the exhibits to PainTEQ's [second amended complaint]." (Doc. # 42 at 11) (citations omitted).

For the purpose of this factor, the Court will ignore the convenience of witnesses who are employees of PainTEQ or Omnia Medical. See Delorenzo v. HP Enter. Servs., LLC, 79 F. Supp. 3d 1277, 1283 (M.D. Fla. 2015) ("Therefore, any employee of HP Enterprise . . . is ignored in considering this factor.").

Omnia Medical has provided no evidence of witnesses – other than its own employees – who live in the Southern District of Ohio. Rather, it appears that a majority of the witnesses reside outside of Ohio. Without more information, it is unclear whether it would be more convenient for individuals located outside of both the Southern District of Ohio and the Middle District of Tampa to travel to each respective district. Given that Omnia Medical bears the burden of showing inconvenience, this factor is neutral. See Combs v. Fla. Dep't of Corr., 461 F. Supp. 3d 1203, 1209-10

(N.D. Fla. 2020) (finding that this factor did not support transfer because the moving party had not demonstrated that "the majority — or even a significant minority – of the essential witnesses would be substantially inconvenienced by a trial" in the original district).

### 2.   Location of the Relevant Documents

The second "factor examines the location of sources of documentary proof and other tangible materials, and the ease with which the parties can transport them to trial." Trinity Christian, 761 F. Supp. 2d at 1327. However, this factor is usually insignificant, as "[m]odern technology largely neutralizes traditional obstacles to providing relevant documents and access to proof." Watson v. Cmty. Educ. Ctrs., Inc., No. 2:10-cv-778-CEH-SPC, 2011 WL 3516150, at *5 (M.D. Fla. Aug. 11, 2011).

Omnia Medical argues that this factor weighs in favor of transfer because its records are maintained in the Southern District of Ohio, while PainTEQ's documents are not centralized in Florida. (Doc. # 21 at 18). PainTEQ counters that "all of the relevant documents in this matter are likely electronically stored and available." (Doc. # 42 at 12).  The Court agrees. Because Omnia Medical has not countered the likelihood that these files are available electronically,

this factor is neutral. <u>See</u> <u>Weintraub</u>, 161 F. Supp. 3d at 1283 ("Although PTS asserts that some key documents are located in Kentucky, it has offered no argument why these documents cannot be easily provided via electronic production. Accordingly, this factor is neutral.").

### 3.   <u>Convenience of the Parties</u>

As to the third factor, "[t]he logical starting point for analyzing the convenience of the parties is . . . their residences[.]" <u>Delorenzo</u>, 79 F. Supp. 3d at 1283 (internal quotation marks and citation omitted). PainTEQ "is a Florida limited liability company with its principal place of business in Hillsborough County, Florida." (Doc. # 10 at ¶ 2). All of PainTEQ's members are Florida entities or citizens. (<u>Id.</u>). Omnia Medical is an Ohio limited liability company with its principal place of business in West Virginia, and members in Ohio, West Virginia, and California. (<u>Id.</u> at ¶ 3).

Because both parties reside in the respective districts, and have employees in both districts, this factor is neutral. <u>See</u> <u>Weintraub</u>, 161 F. Supp. 3d at 1282 ("Accordingly, the Court finds that because there are advantages and disadvantages to either party depending on the venue, this factor does not weigh for or against transfer.").

### 4.   Locus of Operative Facts

As to the fourth factor, the locus of operative facts, Omnia Medical maintains that this factor is neutral because "PainTEQ operates nationally, its customers are located all over the country, and the operative facts pertaining to the claims occurred throughout the country." (Doc. # 21 at 18). PainTEQ responds that this factor actually weighs heavily against transfer because Omnia Medical has not shown that any of the alleged conduct occurred in the Southern District of Ohio, while PainTEQ alleges that Omnia Medical engaged in tortious conduct in Florida. (Doc. # 42 at 14-15).

The pleadings are unclear as to where exactly the alleged infringement and various other allegations in the complaint and counterclaim took place. Therefore, the Court finds that this factor neutral. See Trinity Christian, 761 F. Supp. 2d at 1329 (deeming this factor neutral because "the nationwide scope of the case [did] not establish a locus of facts in any particular forum").

### 5.   Compulsory Process of Witnesses

Under Federal Rule of Civil Procedure 45, which governs the issuance of subpoenas in civil cases, a subpoena may command attendance "within 100 miles of where the person resides, is employed, or regularly transacts business in

person" or "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is a party or a party's officer . . . or . . . is commanded to attend trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1). "This factor is relevant only if a party demonstrates, as a threshold matter, that a particular witness would otherwise be unwilling to testify at trial." Am. Navigation Sys., Inc. v. Samsung Elecs. Co., No. 8:14-cv-1131-CEH-MAP, 2014 WL 12701068, at *5 (M.D. Fla. Dec. 1, 2014).

Here, neither party has identified any witnesses that would be unwilling to testify in either district. (Doc. # 21 at 18; Doc. # 42 at 15). "[A]s neither party has demonstrated the necessity of process to compel the attendance of any witness, this factor is neutral." American Navigation, 2014 WL 12701068, at *5.

### 6.   **Relative Means of the Parties**

With regard to the sixth factor, "the Court must consider the relative means of the parties in determining whether transfer furthers the interest of justice." Poertner v. Gillette Co., No. 6:12-cv-803-GAP-DAB, 2012 WL 12898875, at *3 (M.D. Fla. July 9, 2012). Here, both parties are corporate entities, and the parties concede that this factor is neutral.

26

(Doc. # 21 at 18; Doc. # 42 at 15). The Court agrees. See Amar Shakti Enters., LLC v. Wyndham Worldwide, Inc., No. 6:10-cv-1857-GAP-KRS, 2011 WL 13298587, at *5 (M.D. Fla. June 2, 2011) ("Neither party has raised the relative means of the parties as an issue in this motion to transfer. Both parties appear able to carry on litigation in either district. This concern will not factor into the decision on whether to grant the motion to transfer.").

### 7. __Familiarity with Governing Law__

"The forum's familiarity with governing law is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." Harvard v. Inch, 408 F. Supp. 3d 1255, 1264-65 (N.D. Fla. 2019) (internal quotation marks and citation omitted).

Here, the parties do not appear to agree whether Florida or Ohio substantive law applies to state claims in the instant case. (Doc. # 42 at 15). Regardless, even if Ohio law applies, this Court is more than capable of applying the law of the State of Ohio. Cf. Mirasco, Inc. v. Ghaly, No. 1:17-cv-00289-SCJ, 2017 WL 4890540, at *4 (N.D. Ga. May 30, 2017) ("[T]o the extent that Georgia substantive law applies, both Georgia and California district courts are capable of applying such

law."). By the same token, a court in the Southern District of Ohio would also be able to apply Florida law. Therefore, given the uncertainty of the applicable law, this factor is neutral. See Trans Am Worldwide, LLC v. JP Superior Sols., LLC, No. 4:17-cv-560-MW/CAS, 2018 WL 3090394, at *10 (N.D. Fla. Apr. 30, 2018) (deeming this factor neutral and noting that "district courts often have little trouble applying the law of other states").

### 8. **Plaintiff's Choice of Forum**

Generally, a plaintiff's choice of forum "must be given considerable weight." Sterling v. Provident Life & Accident Ins. Co., 519 F. Supp. 2d 1195, 1207 (M.D. Fla. 2007). Here, the Middle District of Florida is PainTEQ's home forum. (Doc. # 10 at ¶ 2). Therefore, this factor weighs heavily against transfer.

### 9. **Trial Efficiency and the Interests of Justice**

Lastly, the Court considers "the forum in which judicial resources could most efficiently be utilized and [the] place in which trial would be most easy, expeditious, and inexpensive." Garay v. BRK Elecs., 755 F. Supp. 1010, 1013 (M.D. Fla. 1991) (internal quotation marks and citation omitted). "To satisfy its burden, [the defendant] must show that any purported gains in judicial efficiency will clearly

outweigh [the plaintiff's] choice." Intell. Ventures I, LLC v. Motorola Mobility, LLC, No. 13-61358-CIV, 2014 WL 129279, at *3 (S.D. Fla. Jan. 14, 2014) (emphasis and citation omitted). The Court has already found that this public interest factor weighs against transfer.

Because none of the nine Section 1404(a) factors weigh in favor of transfer, and instead are either neutral or weigh against transfer, the Court is not convinced that the Southern District of Ohio is a more convenient forum than the Middle District of Florida. Accordingly, the motion to transfer under the traditional Section 1404(a) analysis is denied. See Serrano v. A Plus Painting, LLC, No. 2:15-cv-30-SPC-DNF, 2015 WL 13805065, at *3 (M.D. Fla. Apr. 28, 2015) (denying transfer because none of the factors weighed in favor of transfer).

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

Defendant and Counterclaimant Omnia Medical, LLC's Motion to Transfer Venue (Doc. # 21) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 30th day of March, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

29