IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAINTEQ, LLC,

    Plaintiff,

  vs.                                    CASE NO. 8:20-cv-02805-VMC-AAS

OMNIA MEDICAL, LLC,

    Defendant.
_____/

**OMNIA MEDICAL, LLC'S CLAIM CONSTRUCTION BRIEF**

{03851468 -2}

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... iii

I. INTRODUCTION ................................................................................................1

II. BACKGROUND AND RELEVANT FACTS ....................................................2

    A. The '539 Patent ..............................................................................................3

    B. The D232 Patent ............................................................................................3

III. LEGAL STANDARDS .........................................................................................4

    A. Claim Construction ......................................................................................4

        1. The '539 Patent .........................................................................................4

        2. The D232 Patent ......................................................................................5

IV. Claim Construction of the disputed terms .........................................................6

    A. The '539 Patent ..............................................................................................6

        1. Disputed Terms for Claim Construction .............................................6

    B. The D232 Patent ..........................................................................................11

        2. Disputed claim constructions ...............................................................11

V. CONCLUSION ...................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315 (Fed. Cir. 2013) ..........................5

*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294 (Fed. Cir. 2010) ..........................................6

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008)(en banc) ....................2, 6

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312 (Fed. Cir. 2015).....................7, 14

*Hupp v. Siroflex*, 122 F.3d 1456, 1460 (Fed. Cir. 1997).............................................................7

*Karlin Tech. Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968 (Fed. Cir. 1999) ......................9, 11

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117 (Fed. Cir. 1993).................................7

*Lanard Toys Limited v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020) ................................7

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005)(en banc) ..................1, 4, 5

*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010) ......................................1, 6

*Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1321-22 (Fed. Cir. 2016) ...............7, 14

*Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1365 (Fed. Cir. 2012) ..........................5

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ........................................4

Defendant/Counter-Plaintiff, Omnia Medical, LLC ("Omnia Medical"), through its counsel pursuant this Court's Patent Scheduling Order (Doc. 27) provides its opening Claim Construction brief relating to the contested constructions in asserted U.S. Patent No. 10,426,539 (the '539 Patent) and U.S. Design Patent No. D905,232 (the D232 Patent).

**I.   INTRODUCTION**

The case law is clear that, in most circumstances, the claims of a patent should generally be given their ordinary meaning as would have been understood by a person of ordinary skill in the art. *See, Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005)(en banc). Here, both the '539 Patent and the D232 Patent are clear on their face and the scope of the claims readily understood by a person of skill in the art. Thus, it is Omnia Medical's position that the claims do not require construction, but to the extent that a construction is deemed necessary, the claims should be construed so as to provide the ordinary meaning as understood by one of skill in the art in view of the specification.

The Federal Circuit has held that the best source of construction for a design patent is the figures of the specification. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010). Thus, the preferable course of construing a design patent claim is to avoid a detailed verbal description of the claimed design so as to prevent undue focus on specific portions of the design in lieu of focusing on the design as a whole. *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 679 (Fed. Cir. 2008)(en banc).

PainTEQ's suggested constructions, however, do not comport with established case law because they seek to impermissibly import limitations into the claims or to improperly exclude features of the claims. For the reasons presented below, PainTEQ's suggested constructions should be rejected. To the extent construction is necessary for any of the contested terms, Omnia Medical's proposed claim constructions should be adopted.

**II.   BACKGROUND AND RELEVANT FACTS**

Omnia Medical has asserted that, *inter alia*, PainTEQ infringes two patents – U.S. Patent No. 10,426,539 (the '539 Patent) and U.S. Design Patent No. D905,232 (the D232 Patent).

Omnia Medical is the exclusive licensee of intellectual property owned by Orthocision, Inc., including the '539 Patent and the D232 Patent. As the exclusive licensee, Omnia Medical has the right to, *inter alia*, use the licensed intellectual property and to enforce, litigate, initiate court proceedings, and/or settle all past, present, and future claims arising from or related to the licensed intellectual property.

PainTEQ, LLC ("PainTEQ") manufactures, sells, and offers to sell products for use in surgical procedures for sacroiliac ("SI") joint repair and joint fusion, including the LinQ™ SI Joint Stabilization System (the LinQ™ Products). When used as instructed by PainTEQ, the LinQ™ Products infringe the method claimed in claim 26 of the '539 Patent. The LinQ™ Products include a surgical cannula that infringes the claimed design of the D232 Patent.

### A. The '539 Patent

The '539 Patent issued on October 1, 2019 from an application having an effective filing date of March 15, 2013. The '539 Patent issued with 31 claims. Omnia Medical alleges that claim 26 is infringed by PainTEQ. Claim 26 is reproduced below:

> A method for repairing a sacroiliac joint of a patient, comprising:
> a. creating an incision in the patient's skin in a position proximal to the patient's sacroiliac joint to allow access to the posterior portion of the sacroiliac joint;
> b. inserting a working channel into said incision and spreading said posterior portion of the sacroiliac joint with an inserted end of said working channel;
> c. creating a void in said posterior portion of the sacroiliac joint; and
> d. inserting a single fusion implant into said void along a path that is substantially parallel to articular surfaces of the sacroiliac joint, said fusion implant having at least one fixation element for engagement with bone tissue in an articular surface of at least one of an ilium and a sacrum in said sacroiliac joint, wherein said at least one fixation element engages with said articular surface of at least one of said ilium and said sacrum and no further implants or fusion devices are introduced into the sacroiliac joint or surrounding tissues.

### B. The D232 Patent

The D232 Patent issued on December 15, 2020 from an application having an effective filing date of March 25, 2015. The D232 Patent claims the ornamental design for a surgical cannula. Figure 1 from the D232 Patent is reproduced below:



{03851468 -2}

3

## III. LEGAL STANDARDS

### A. Claim Construction

#### 1. The '539 Patent

The claims of a patent "are generally given their ordinary and customary meaning" which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-1313 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

The Federal Circuit has made it clear that it is improper to read limitations into the claims from the specification:

> It is likewise not enough that the only embodiments, or all of the embodiments, contain a particular limitation. We do not read limitations from the specification into claims; we do not redefine words. Only the patentee can do that.

*Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1365, 1366-67 (Fed. Cir. 2012) (see also, *Phillips*, 415 F.3d at 1320 ("one of the cardinal sins of patent law [is] reading a limitation from the written description into the claims") (citations omitted)).

The courts have also acknowledged that the patent's prosecution history generally should be considered in claim construction. *Phillips*, 415 F.3d at 1317. "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* Any disavowal of claim scope during prosecution must be clear and unmistakable. *See 3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315 (Fed. Cir. 2013).

### 2. The D232 Patent

The courts have consistently warned against reliance on a detailed verbal description of a design claim in patent infringement litigation. See, e.g., *Egyptian Goddess*, 543 F.3d at 679 ( "[g]iven the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design.") The courts further counsel against a detailed verbal description of the claimed design, because reliance on such a description "risks undue emphasis on particular features of the design rather than examination of the design as a whole." (See, *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302-03 (Fed. Cir. 2010)). Instead, a design is best represented by the figures themselves and "claim construction must be adapted to a pictorial setting." *Richardson*, 597 F.3d at 1294.

The D232 Patent claims the ornamental design for a surgical cannula, as shown and described in the ten figures included in the specification. PainTEQ asserts that every distinct element of the design is functional and that these alleged functional elements must be factored out during claim construction. While the underlying article of manufacture (i.e., the surgical cannula) serves a function, that fact should have no influence on the construction of the claimed design. "[T]he fact that the article of manufacture serves a function is a *prerequisite* of design patentability, not a defeat thereof. The function of the article [of manufacture] itself must not be confused with 'functionality' of the design of the article." *Hupp v. Siroflex*, 122 F.3d 1456, 1460 (Fed. Cir.

1997) (emphasis added)(citation omitted); *see also L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("An article of manufacture necessarily serves a utilitarian purpose[.]").

While courts have considered the distinction between purely function and ornamental aspects of claimed designs, courts have steered away from using claim construction to *eliminate* elements from the claimed design as functional. *See Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1321-22 (Fed. Cir. 2016) (holding the district court's construction was erroneous "because it eliminate[d] whole aspects of the claimed design"); *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1334 (Fed. Cir. 2015) (reversing district court's claim construction that factored out elements as purely functional); *Lanard Toys Limited v. Dolgencorp LLC*, 958 F.3d 1337, 1342 (Fed. Cir. 2020) (upheld construction acknowledging the ornamental aspects of each functional element without eliminating entire elements of the claimed design). Thus, eliminating any aspect of a claimed design as functional is inappropriate at the claim construction stage.

## IV. CLAIM CONSTRUCTION OF THE DISPUTED TERMS

### A. The '539 Patent

#### 1. Disputed Terms for Claim Construction

Below are the parties' respective terms for claim construction for asserted claim 26 of the '539 Patent as provided in the Joint Claim Construction and Prehearing Statement (D.I. 45).

| U.S. Patent No. 10,426,539 (Claim 26) | Omnia's Preliminary Proposed Construction | PainTEQ's Preliminary Proposed Construction |
|---|---|---|
| Fixation element | Stabilization part | Helical anchors, lateral blades, flukes, claws, hooks, and screw structures, which fix the position of the fusion implant and provide for compression across the sacroiliac joint. |
| For engagement with bone tissue in an articular surface | Configured to move the fixation element into position so as to come into operation with the bone tissue in the articular surface | Configured for interlocking with bone tissue in the articular surface in a piercing or penetrating manner. |
| Engages with said articular surface | The fixation element comes into operation with the bone tissue in the articular surface | Interlocks with bone tissue in the articular surface |

### a. "fixation element"

No construction is necessary for the claim term "fixation element" because it is clear on its face. One of skill in the art would readily understand the meaning of "fixation element" in the context of the claim and the specification. To the extent the court believes construction is necessary, Omnia Medical's proposed construction of a "stabilization part" properly reflects the plain and ordinary meaning to the claims term as it would be understood by a person of ordinary skill in the art.

PainTEQ's proposed construction violates the basic tenets of claim construction by importing improper limitations into the claims. Nothing in the specification or the claims suggest that the function of the fixation element "fix[es] the position of the fusion implant and provide[s] for compression across the sacroiliac joint." In fact, the claim itself defines the function of the fixation element – it is "for engagement with bone

{03851468 -2}                                       7

tissue." Adoption of PainTEQ's proposed construction would read this feature out of the claim and improperly limit the function of the claimed fixation element.

Claim differentiation further supports Omnia Medical's proposed construction. The doctrine of claim differentiation is based on "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Karlin Tech. Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999). Like claim 26, claim 1 of the '539 Patent includes the element "at least one fixation element for engagement with bone tissue in an articular surface of at least one of an ilium and a sacrum in said sacroiliac joint." The only substantive difference between the two claims is that claim 1 requires "wherein said at least one fixation element first penetrates said articular surface of at least one of said ilium and said sacrum and said fusion implant compresses the sacroiliac joint" whereas claim 26 requires "wherein said at least one fixation element engages with said articular surface of at least one of said ilium and said sacrum and no further implants or fusion devices are introduced into the sacroiliac joint or surrounding tissues." Construing the term "fixation element" as the feature that "fix[es] the position of the fusion implant and provide[s] for compression across the sacroiliac joint" would violate the claim differentiation doctrine.

### b. "for engagement with bone tissue in an articular surface"

No construction is necessary for the claim term "for engagement with bone tissue in an articular surface" because it is clear on its face. One of skill in the art would

readily understand the meaning of "for engagement with bone tissue in an articular surface" in the context of the claim and the specification. To the extent the court believes construction is necessary, Omnia Medical's proposed construction of "configured to move the fixation element into position so as to come into operation with the bone tissue in the articular surface" properly reflects the plain and ordinary meaning to the claims term as it would be understood by a person of ordinary skill in the art.

Omnia Medical's proposed construction comports with the plain and ordinary meaning of the term "engagement" as it is used in the claim. The plain and ordinary meaning of "engagement" does not include "interlocking… in a piercing or penetrating manner." As provided by Lexico.com, "engage" means "move into position so as to come into operation." An example given for this usage include "the clutch will not engage." (See https://www.lexico.com/en/definition/engage). Here, this ordinary definition is appropriate.

Unlike Omnia Medical's proposed construction, PainTEQ's construction is overly complex and unnecessarily narrow. Nothing in the claims or the specification suggests that engagement means "interlocking…in a piercing or penetrating manner." Accordingly, PainTEQ's proposed construction is not supported by any intrinsic evidence or by the understanding of one of ordinary skill in the art.

In addition, claim differentiation supports Omnia Medical's proposed construction, not PainTEQ's. Claim 29, which depends from claim 26 provides that the

{03851468 -2}  9

"at least one fixation element penetrates said bone tissue." Thus it is clear that had Applicant intended for the term engagement to mean "interlocking…in a piercing or penetrating manner," he knew how to do it. *See, Karlin Tech.*, 177 F.3d at 971-72 (The doctrine of claim differentiation is based on "the common sense notion that different works or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope.")

Should the court decide that the term "for engagement with bone tissue in an articular surface" needs construction, Omnia Medical's proposed construction of "configured to move the fixation element into position so as to come into operation with the bone tissue in the articular surface" should be adopted.

### c. "engages with said articular surface"

No construction is necessary for the claim term "engages with said articular surface" because it is clear on its face. One of skill in the art would readily understand the meaning of "engages with said articular surface" in the context of the claim and the specification. To the extent the court believes construction is necessary, Omnia Medical's proposed construction of "the fixation element comes into operation with the bone tissue in the articular surface" properly reflects the plain and ordinary meaning to the claims term as it would be understood by a person of ordinary skill in the art.

Omnia Medical's proposed construction reflects that fact that the term "engages with said articular surface" is a shortened version of the clause "at least one fixation

element for engagement with bone tissue in an articular joint." In context, claim 26 of the '539 Patent reads:

> …said fusion implant having **at least one fixation element for engagement with bone tissue in an articular surface** of at least one of an ilium and a sacrum in said sacroiliac joint, **wherein said at least one fixation element engages with said articular surface** of at least one of said ilium and said sacrum and no further implants or fusion devices are introduced into the sacroiliac joint or surrounding tissues…

The two clauses use the same words because they are meant to say the same thing – the fixation element engages with bone tissue in an articular surface.

PainTEQ's proposed construction should not be adopted for the reasons provided above. In addition, it is unclear why PainTEQ's two proposed constructions differ.

### B. The D232 Patent

#### 2. Disputed claim constructions

The D232 Patent recites one claim "the ornamental design for a surgical cannula, as shown and described" in ten figures.

As set forth in the Joint Claim Construction and Prehearing Statement (D.I. 45.), the parties' positions regarding the construction of the D232 Patent are as follows.

Omnia Medical believes that no construction is necessary for the D232 Patent. If construction is deemed necessary, Omnia Medical proposes that the design be construed such that every element of the D232 Patent contributes to the overall ornamentation of the design and that it is improper to "filter out" functional elements in claim construction as "functional" elements may include ornamental aspects.

PainTEQ proposes that every element of the D232 Patent is functional, as outlined in red in the accompanying figures (D.I. 45). PainTEQ further states that after filtering out the functional elements of the design, there are no remaining protectable elements of the D232 Patent.

The D232 Patent claims the ornamental design for a surgical cannula, as shown and described in the ten figures included in the specification. PainTEQ asserts that every element of the design is functional and that these functional elements must be filtered out during claim construction. This approach to claim construction in design patents has been widely rejected by the courts. *See Sport Dimension*, 820 F.3d at 1321-22.

In addition, PainTEQ's allegation that every element of the D232 Patent is purely functional is misleading and inaccurate. First, as noted above, the fact that an article of manufacture is functional is not surprising. In fact, it *must* be functional in order to qualify as an article of manufacture for patentability. There is no particular test for determining when a claimed design is improperly "functional." *See, Ethicon*, 796 F.3d at 1329. However, courts have found the "availability of alternative designs" to be an important, if not dispositive, factor in assessing whether a design is dictated by function. *See,* Ethicon, 796 F.3d at 1329-30.

Here, Omnia Medical does not claim to have invented the surgical cannula. In fact, there are many surgical cannula on the market that are not substantially similar to the design claimed in the D232 Patent. Thus, for example, while the body of the cannula performs the function of providing a cavity through which instruments may

pass, the claimed shape of the body is not dictated by this function. In addition, while the tangs of the surgical cannula may assist in stabilizing the surgical cannula, this function does not dictate the shape of the tangs. Because there are many different possible designs for each element of the surgical cannula, it is evident that none of the elements of the claimed design are purely functional.

Thus, to the extent the D232 Patent requires construction the court should adopt Omnia Medical's proposed construction and construe the claim as "the ornamental design for a surgical cannula, as shown and described in Figures 1-10 and the specification of the D232 Patent."

## V. **CONCLUSION**

For the reasons stated above, Omnia Medical's proposed claim constructions should be adopted where construction is deemed necessary. PainTEQ's proposed constructions should be rejected because they do not apply the plain and ordinary meaning of the disputed terms and improperly import limitations into the claims.

Dated: July 28, 2021.

                                                  Respectfully submitted,

                                                  */s/ Matthew G. Davis*
                                                  E.A. "Seth" Mills, Jr.
                                                  Florida Bar No. 339652
                                                  *smills@mpdlegal.com*
                                                  Matthew G. Davis
                                                  Florida Bar No. 58464
                                                  *mdavis@mpdlegal.com*
                                                  MILLS PASKERT DIVERS
                                                  100 North Tampa Street, Suite 3700
                                                  Tampa, FL 33602

               813.229.3500 (telephone)
               813.229.3502 (facsimile)

               Ralph E. Cascarilla
               Florida Bar No. 315303 *
               *rcascarilla@walterhav.com*
               WALTER | HAVERFIELD LLP
               1301 E. Ninth Street, Suite 3500
               Cleveland, OH 44114
               216.928.2908 (direct dial)
               216.916.2346 (direct facsimile)
               * admitted to this action *pro hac vice*
               *Attorneys for Omnia Medical, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Court's CM/ECF system which will provide service via electronic mail to all registered participants listed on July 28, 2021.

               */s/ Matthew G. Davis*
               Matthew G. Davis