UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAINTEQ, LLC,

       Plaintiff,

v.                         Case No. 8:20-cv-2805-VMC-AAS

OMNIA MEDICAL, LLC,

       Defendant.

_____/

**ORDER**

This matter comes before the Court upon Plaintiff and Counterclaim-Defendant PainTEQ, LLC's Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed on April 8, 2024. (Doc. # 160). Defendant and Counterclaimant Omnia Medical, LLC responded in partial opposition on April 29, 2024. (Doc. #168). For the reasons set forth below, the Motion is granted in part and denied in part.

**I.   Background**

This matter is based upon two separate cases, the present case and 8:22-cv-145-VMC-TGW, which has been consolidated into the present case. (Doc. # 101; 8:22-cv-00145 at Doc. # 102). PainTEQ is a Florida limited liability company with its principal place of business in Hillsborough County, Florida. (Doc. # 10 at 1). PainTEQ's members are Florida citizens.

1

(<u>Id.</u>). Omnia Medical is an Ohio limited liability company with its principal place of business in West Virginia. (<u>Id.</u> at ¶ 3). Omnia Medical's members are Ohio, West Virginia, and California citizens. (<u>Id.</u>).

Omnia "develops novel products that reduce operative time through safe and reproducible instrumentation, while achieving superior surgical outcomes. It produces, sells, and distributes the PsiFTM System for use in surgical procedures for sacroiliac ('SI') joint repair." (Doc. # 20 at 24).

At issue in this Motion, Omnia represents that non-party Orthocision Inc. owns the U.S. Trademark Registration No. 4,646,387 ("'387 Registration") and U.S. Trademark Registration No. 4,646,388 ("'388 Registration"), Copyright Registration Number VA 2-209-321 ("'321 Registration") and Copyright Registration Number VA 2-212-904 ("'904 Registration"), and that Omnia is the exclusive licensee for each of these items. (Doc. # 20 at 25). As the exclusive licensee, Omnia argues that it has the right to use the licensed intellectual property and to enforce, litigate, initiate court proceedings, and/or settle all past, present, and future claims arising from or related to the licensed intellectual property. (<u>Id.</u>). Omnia also asserts that this contract is governed by Ohio law. (<u>Id.</u> at 27).

2

A more detailed history of the '321 and '904 copyright registrations mentioned above is necessary. The '321 registration was authored by Troy Schifano, Steve Anderson, and Adam Young. (Doc. # 20-7). The '904 registration was authored by Adam Young alone. (Doc. # 20-9). The '321 was registered by Orthocision on July 3, 2020. (Doc. # 20-7). The '904 registration was registered by Orthocision on July 11, 2020. (Doc. # 20-9).

PainTEQ "provides services and solutions to the interventional pain management community, including interventional spine specialist physicians." (Doc. # 1-1 at 2).

PainTEQ and Omnia entered into a business relationship beginning around December 2016. (Doc. # 20 at 25). This relationship was solidified by a written contract between the companies called the Stocking Agreement. (Id. at 25-26). Pursuant to this agreement, PainTEQ served as the exclusive distributor for Omnia implants and instrumentation for SI joint fusion procedures in the interventional pain community. (Doc. # 10 at 3). Additionally, Omnia provided access and knowledge of its PsiF™ Surgical Technique Guide, the PsiF™ System, as part of its relationship with PainTEQ. (Doc. # 20 at 27).

According to PainTEQ, Omnia was unable to supply enough implants to meet demand, leading PainTEQ to end the relationship with Omnia. (Doc. # 10 at 3-4). While searching for a new supplier, PainTEQ created a new SI procedure called the LinQ™ procedure. (Id.) According to Omnia, the LinQ™ procedure is "substantially similar" to equipment they sell. (Doc. # 20 at 27). Omnia also alleges that in conjunction with this procedure, PainTEQ began using a LinQ™ Surgical Technique Guide, which included copied images of drawings of tools from Omnia Medical's PsiF™ System and the copying of Omnia Medical's trademarked name. (Id. at 34).

Following the dissolution of their business relationship, PainTEQ alleges that Omnia engaged in a "revenge campaign" against PainTEQ. (Doc. # 1-1 at 9). This campaign allegedly included hiring several former PainTEQ employees and encouraging current PainTEQ employees to join Omnia, and then having these individuals use their insider information gained from PainTEQ to Omnia's benefit and PainTEQ's detriment. (Id.). According to PainTEQ, Omnia employees contacted PainTEQ customers and distributors to provide false information about PainTEQ in an effort to persuade these customers and distributors to provide their business to Omnia instead of PainTEQ. (Id. at 9-11).

4

PainTEQ initiated the present action in state court against its former employee, Chad Subasic, on April 8, 2020. (Doc. # 1 at 1). PainTEQ amended its complaint on June 2, 2020, to add Omnia Medical as a defendant. (Id. at 1-2; Doc. # 1-1). On October 29, 2020, PainTEQ and Subasic filed a stipulation of dismissal, and the claims against Subasic were dismissed. (Doc. # 1 at 2). On November 30, 2020, Omnia Medical removed the case to this Court on the basis of diversity jurisdiction. (Doc. # 1).

On December 4, 2020, PainTEQ filed a second amended complaint, including the following claims against Omnia Medical: violation of the Florida Uniform Trade Secrets Act (Count I), tortious interference with a business relationship (Count II), tortious interference with a contractual relationship (Count III), and defamation (Count IV). (Doc. # 10). On December 18, 2020, Omnia Medical filed its answer and counterclaims. (Doc. # 20). The counterclaim includes the following causes of action against PainTEQ: patent infringement (Counts I and II), copyright infringement (Counts III and IV), trademark infringement (Counts V and VI), breach of contract (Count VII), violations of the Ohio Deceptive Trade Practices Act (Count VIII), violations of the

Florida Deceptive and Unfair Trade Practices Act (Count IX), and common law unfair competition (Count X). (Id.)

On December 18, 2020, Omnia Medical moved to transfer this case to the Southern District of Ohio. (Doc. # 21). PainTEQ responded on February 5, 2021. (Doc. # 42). The Court denied the motion on March 30, 2021. (Doc. # 44).

On January 18, 2022, Omnia initiated an action against PainTEQ and two of its agents, Sean LaNeve and Charles Girsch, in 8:22-cv-145. (8:22-cv-145 at Doc. # 1-1). Omnia alleged infringement of the D568 and '511 Patents (Counts VI and VII) and also asserted twelve non-patent claims related to the Stocking Agreement. (Id.). On March 28, 2022, PainTEQ, Mr. LaNeve, and Mr. Girsch filed a motion to dismiss the complaint. (Doc. # 18).

The Court dismissed Counts I-V and VIII-XIV of Omnia's complaint for improper claim-splitting, based on the still-pending suit between the two parties in the present action. (Doc. # 45). PainTEQ answered the complaint on August 17, 2022, asserting four counterclaims, each for a declaratory judgment. (Doc. # 48). Counts I and II seek a declaratory judgment of invalidity and non-infringement, respectively, of the '511 Patent. (Id.). Counts III and IV seek a declaratory

judgment of invalidity and non-infringement, respectively, of the D568 Patent. (Id.).

On January 30, 2023, the Court held a Markman hearing, where the parties discussed all matters related to claim construction for each case. (8:20-cv-2805 at Doc. # 80; 8:22-cv-145 at Doc. # 91). On June 30, 2023, the Court entered its order on claim construction in each case respectively. (8:20-cv-2805 at Doc. # 88; 8:22-cv-145 at Doc. # 91).

On August 18, 2023, the Court held a joint Case Management Hearing, in which the Court granted the joint oral motion of the parties to consolidate the cases for trial purposes only. (8:20-cv-2805 at Doc. # 101; 8:22-cv-145 at Doc. # 102).

Now, PainTEQ moves to dismiss Counts One, Three, Four, Five, and Six of Omnia's counterclaim in the present case and Count Seven of its complaint in 8:22-cv-145. (8:20-cv-2805 at Doc. # 160). Omnia has responded in partial opposition, as it opposes dismissal of Counts Three, Four, Five, and Six of its counterclaim, but does not oppose dismissal of Count One of its counterclaim nor Count Seven of its complaint in 8:22-cv-145. (Doc. # 168). The Motion is now ripe for review.

## II.  **Legal Standard**

The "procedural vehicle to frame the [statutory standing] issue is a motion under Rule 12(b)(6)." Palm Beach Concours, LLC v. SuperCar Wk. Inc., No. 22-80888-CV-DMM, 2022 WL 18034428, at *3 (S.D. Fla. Dec. 30, 2022), report and recommendation adopted, No. 22-80888-CV, 2023 WL 249937 (S.D. Fla. Jan. 18, 2023).

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations and citations omitted). Courts are not "bound to

accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to "well-pleaded factual allegations, documents central to or referenced in the [counterclaim and third-party complaint], and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam); see also Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009) (holding that parties in a motion to dismiss could not rely upon contracts that were not mentioned in the operative complaint).

**III.** **Analysis**

**A.** **Count One of Omnia's Counterclaim and Count Seven of Omnia's Complaint in 8:22-cv-145**

In its Motion, PainTEQ moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss Count One of Omnia's

counterclaim and Count Seven of its Complaint in 8:22-cv-145. (Doc. # 160 at 1). Omnia states that it does not oppose dismissal of these claims. (Doc. # 168 at 3 n.1). Accordingly, the Court dismisses these claims without prejudice.

### B. **Documents Attached to the Motion**

In its Motion, PainTEQ relies significantly upon documents that were not appended to Omnia's pleading. Most significantly, PainTEQ relies upon the Exclusive Licensing Agreement ("ELA") and the assignment of rights from Troy Schifano, Steve Anderson, and Adam Young to Orthocision to make its arguments. (Doc. # 160). Omnia submits that PainTEQ's reliance upon these filings make its Motion procedurally improper. (Doc. # 168 at 3).

Omnia as counterclaimant referred repeatedly to its ELA with Orthocision in its counterclaim. (Doc. # 20 at 25). PainTEQ attached the ELA to its Motion. (Doc # 160-4). Considering the prior reference and the centrality of the ELA to the dispute, the Court may properly consider the ELA in its adjudication of this Motion. See Brooks, 116 F.3d at 1369 ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal.").

In its counterclaim, Omnia attached Orthocision's copyright registrations for the '904 and '321 registrations, which each contain an entry stating that the transfer occurred "by written agreement." (Doc ## 20-7; 20-9). Beyond the singular entries on each registration, Omnia makes no other reference to the written agreement or to what the terms of that written agreement contain. (Doc # 20). On such a record, the Court finds that a document containing the assignment of rights from Troy Schifano, Steve Anderson, and Adam Young to Orthocision is not central to Omnia's counterclaims. See Brooks, 116 F.3d at 1369 (requiring that the documents be "central" to the plaintiff's claim); S-Fer Int'l, Inc. v. Stonesheets, LLC, No. 14-24662-CIV, 2016 WL 8808749, at *6 (S.D. Fla. July 22, 2016) (holding that when a plaintiff did not allege any facts related to a document and the contract was not attached to the complaint, that contract cannot be considered in a 12(b)(6) action). Accordingly, the Court will not consider the document containing the assignment of rights from Troy Schifano, Steve Anderson, and Adam Young to Orthocision, which PainTEQ had attached to its Motion. (Doc. # 160-5).

## C. **Counts Five and Six of Omnia's Counterclaim**

In its Motion, PainTEQ asserts that Omnia's status as a licensee of the trademarks for the '387 Registration and '388 Registration negate its statutory standing to prosecute alleged infringements of both of the trademarks. (Doc. # 160 at 2-3). In response, Omnia counters that its licensee status granted via the ELA agreement provide it with the right to sue for trademark infringement. (Doc. # 168 at 1-2).

The ELA between Omnia and Orthocision gives Omnia the right to prosecute infringements of Orthocision's intellectual property. The ELA contained the following clause:

> As between Licensor and Licensee, the Parties agree as follows: [] Licensor shall provide Licensee with the sole right, but not the obligation, to Prosecute Intellectual Property applications and issued Intellectual Property, in Licensee's sole discretion.

(Doc. # 160-4 at 4-5). The ELA defined "prosecute" to include, in relevant part:

> the right to prosecute, enforce, litigate, initiate court proceedings, arbitrate or engage in other dispute resolution methods, and settle all or compromise all past, present, and future claims, arising from or related to the grant of the Intellectual Property . . . as set forth in this agreement.

(Id. at 1-2). The Court also notes that the ELA contains an Ohio choice-of-law provision. (Id. at 6). Under Ohio law, the terms of the contract persuade the Court that the ELA provided

Omnia the right to prosecute infringements of Orthocision's licensed intellectual property. See DN Reynoldsburg, LLC v. Maurices Inc., (225 N.E.3d 454, 549) (Ohio Ct. App. 2023) (holding that under Ohio law, "[t]he intent of each party is to be gathered from a consideration of the contract as a whole . . . If the terms of the contract are clear and precise, the contract is not ambiguous and the trial court is not permitted to refer to any evidence outside of the contract itself." (internal quotations and citations omitted)).

Given its rights under the ELA, Omnia may properly assert claims under the Lanham Act. "In order to bring a trademark infringement suit under 15 U.S.C. § 1114, the plaintiff must be a registrant, a term that only encompasses the trademark registrant and its legal representatives, predecessors, successors and assigns." Geltech Sols., Inc. v. Marteal, Ltd., No. 09-CV-81027, 2010 WL 1791423 at *4 (S.D. Fla. May 5, 2010) (internal quotations and citations omitted). "Trademark licensees thus typically do not have standing to sue under § 1114. Courts have held, however, that exclusive licensees of trademarks can sue to protect the trademark from infringement." Id. "The determination of whether a licensee has standing to sue under [15 U.S.C.] § 1114 largely depends on the rights granted to the licensee in the licensing

agreement." Hako-Med USA, Inc. v. Axiom Worldwide, Inc., No. 806CV-1790T-27EAJ, 2006 WL 3755328, at *6 (M.D. Fla. Nov. 15, 2006), report and recommendation adopted, No. 8:06CV1790 T27EAJ, 2006 WL 3760415 (M.D. Fla. Dec. 19, 2006).

The ELA provided Omnia the "sole right" to initiate lawsuits to protect Orthocision's trademarks. (Doc. # 160-4). This grant of rights to Omnia establishes Omnia's statutory standing under the Lanham Act. See Drew Est. Holding Co., LLC v. Fantasia Distribution, Inc., 875 F. Supp. 2d 1360, 1366 (S.D. Fla. 2012) (holding that licensee could bring suit under the Lanham Act when the licensing agreement provided licensee the right to "initiate lawsuits to enforce its rights" in the licensed intellectual property); see also Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc., 920 F.3d 704, 709 (11th Cir. 2019) (holding that a licensee lacks statutory standing because the licensing agreement expressly required that the licensor "protect the trademark properly from any attempts of illegal use, to the best of his knowledge" (internal quotations omitted)).

Thus, the Motion is denied as to Counts Five and Six of the Counterclaim.

D. **Counts Three and Four of Omnia's Counterclaim**

The parties agree that Omnia can maintain a claim based on copyright infringements occurring after October 2, 2020, which is the effective date of the ELA. (Doc. # 160 at 11; Doc. # 168 at 14-15). PainTEQ asserts, however, that Omnia lacks statutory standing to sue for any alleged infringement of the '321 and '904 copyrights that occurred prior to the effective dates of the ELA and Orthocision's registration of the copyrights. (Doc. # 160 at 9). Thus, PainTEQ maintains that these counts should be dismissed to the extent they allege infringement before those dates. Omnia counters that the ELA empowers it to sue for all past infringements of the copyright registrations. (Doc. # 168 at 15).

Under Section 501(b) of the Copyright Act, "the legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). "The copyright owner must have such status at the time of the alleged infringement to have standing to sue." Optima Tobacco Corp. v. US Flue-Cured Tobacco Growers, Inc., 171 F. Supp. 3d 1303, 1308 (S.D. Fla. 2016). This right extends to exclusive licensees. See World Thrust Films Inc. v. Int'l Fam. Ent. Inc., No. 93 0681 CIV, 1996 WL 605957, at *4 (S.D. Fla. Aug. 1, 1996) ("[T]he

copyright owner or exclusive licensee must have such status at the time of the alleged infringement."); see also Minden Pictures, Inc. v. John Wiley & Sons, Inc., 795 F.3d 997, 1004-05 (9th Cir. 2015) (holding that exclusive licensees can bring suit under the Copyright Act).

Some courts have recognized a right to sue for "accrued infringements (of the assignor)," Lorentz v. Sunshine Health Prod., Inc., No. 09-61529-CIV, 2010 WL 3733986, at *8 (S.D. Fla. Aug. 27, 2010), report and recommendation adopted, No. 09-61529-CIV, 2010 WL 3733985 (S.D. Fla. Sept. 23, 2010), but require "that the contract cover in no uncertain terms choses in action for past, prior, accrued damages." Prather v. Neva Paperbacks, Inc., 410 F.2d 698, 700 (5th Cir. 1969). "A mere assignment of a copyright does not of itself transfer to the assignee any cause of action for infringements that occurred prior to the assignment." Id. "Unless the assignment of copyright contains language explicitly transferring causes of action for prior infringements, the assignee cannot maintain a suit for infringements which happened before the effective date of the assignment." Id.; see also Infodek, Inc. v. Meredith-Webb Printing Co., 830 F. Supp. 614, 620 (N.D. Ga. 1993) ("Explicit language of a transfer of a right to past infringements is necessary."); Vellejo v. Narcos Prods. LLC,

418 F. Supp. 3d 1084, 1088 (S.D. Fla. 2019) (holding that an assignment of the right to pursue "any and all causes of action" was not explicit enough to include the right to pursue past causes of action).

For each copyright, Omnia asserts in its counterclaim that "it has the right to enforce, litigate, initiate court proceedings, and/or settle all past, present, and future claims arising from or related to the copyright." (Doc. # 20 at 34, 37). However, the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan, 478 U.S. at 286. Accordingly, Omnia must allege sufficient facts to establish its right to sue for past infringements.

Omnia's reliance upon its ELA with Orthocision to establish its standing to sue for all prior copyright infringements is misplaced. (Doc. # 168). True, Orthocision provided Omnia as exclusive licensee the right to sue "for all past, present, and future claims" related to the copyrights. (Doc. # 160-4 at 1-2). However, Orthocision could only assign rights that it possessed. See World Thrust Films Inc., 1996 WL 605957 at *4 (requiring chain of title in the right to sue for prior infringements). Orthocision's copyright registrations are effective as of July 3, 2020, and

July 11, 2020, respectively. (Doc ## 20-7; 20-9). The status of those registrations prior to those dates is unclear from Omnia's counterclaim as it has not alleged any facts to this effect. (Doc. # 20). Omnia has also failed to allege any facts regarding the status of the process through which Orthocision obtained the rights to the registration other than the singular entries on each registration which indicate that the rights were obtained by "written agreement." (Doc. ## 20-7; 20-9).

The Court needs to find "language explicitly transferring causes of action for prior infringements" in Orthocision's assignment of the copyrights. Prather, 410 F.2d at 700. Omnia has not pointed to any language explicitly transferring to Orthocision the right to sue for infringements prior to its dates of registration, July 3, 2020, and July 11, 2020, respectively. (Doc. ## 20-7; 20-9). Because of this lack of factual allegations, the Court cannot plausibly conclude that Orthocision possessed the right to sue for infringements prior to those dates, and thus could transfer that right in the ELA. Accordingly, Omnia does not have statutory standing to sue for infringements prior to July 3, 2020, for Count Three and July 11, 2020, for Count Four.

However, the Court finds that Omnia may properly sue for infringements that occurred after those dates but prior to Orthocision licensing the copyrights to Omnia. After those dates, Orthocision had the rights to the copyrights. (Doc. ## 20-7; 20-9). As an exclusive licensee, Omnia can properly assert claims for copyright infringement. See World Thrust Films Inc., 1996 WL 605957 at *4 ("[T]he copyright owner or exclusive licensee must have such status at the time of the alleged infringement."). Through the ELA, Omnia obtained from Orthocision the right to sue for "all past, present, and future claims" relating to each copyright. (Doc. # 160-4 at 4-5). By denoting the right to sue for "past" infringements, the ELA empowered Omnia to assert claims for infringements dating back to when Orthocision had obtained the rights to the copyrights — July 3, 2020, and July 11, 2020, for each copyright respectively. See Infodek, 830 F. at 620 ("Explicit language of a transfer of a right to past infringements is necessary.").

In both Counts Three and Four, Omnia does not limit its claims for infringement to any specific period. (Doc. # 20 at 33-39). As the Court finds that Omnia lacks statutory standing to assert its claims for infringements prior to July 3, 2020, and July 11, 2020, for each Count respectively, Count Three

19

must be dismissed in so far as it alleges infringement prior to July 3, 2020, and Count Four must be dismissed in so far as it alleges infringement prior to July 11, 2020. Each count survives in so far as it alleges infringements after July 3, 2020, and July 11, 2020, respectively. Accordingly, the Court dismisses these counts, but grants leave to Omnia solely to amend Counts Three and Four to limit its claims to alleged infringements occurring after those respective dates.

### E.   Amendment

In its response to the Motion, Omnia seeks leave to amend its counterclaims to allege facts to justify its standing before the respective dates, and also to join Orthocision as a party under Rule 20. (Doc. # 168, at 17). However, "where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." Newton v. Duke Energy Fla., LLC, 895 F.3d 1270, 1277 (11th Cir. 2018); see also Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999) (explaining that a plaintiff wishing to amend its complaint must file a separate motion for leave to amend and either set forth the substance of the proposed amendment or attach a copy of the amended pleading).

Therefore, the Court denies Omnia's improperly-raised request for leave to amend its counterclaims beyond

temporally limiting its claims of infringement, and denies its request for leave to join Orthocision as a co-defendant. As mentioned before, however, the Court permits Omnia to amend Counts Three and Four of the counterclaim to explicitly limit the time period of those claims.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Plaintiff PainTEQ's Motion to Dismiss (Doc. # 160) is **GRANTED** in part and **DENIED** in part.

(2) Count One of Omnia's counterclaim in 8:20-cv-2805-VMC-AAS and Count Seven of Omnia's complaint in 8:22-cv-145-VMC-TGW are dismissed.

(3) Counts Three and Four of Omnia's counterclaim in 8:20-cv-2805 are dismissed with leave to amend to limit these claims to events occurring after July 3, 2020, and July 11, 2020, respectively.

(4) Omnia must file its amended counterclaim within 14 days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 27th day of August, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE