UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAINTEQ, LLC,

      Plaintiff,

v.                                        Case No. 8:20-cv-2805-VMC-AAS

OMNIA MEDICAL, LLC,

      Defendant.

_____/

**ORDER**

    This matter comes before the Court upon Plaintiff and Counterclaim-Defendant PainTEQ, LLC's Motion for Summary Judgement, filed on May 6, 2024. (Doc. # 174). Defendant and Counterclaimant Omnia Medical, LLC responded in opposition on June 6, 2024. (Doc. # 183). PainTEQ replied and filed two notices of supplemental authority. (Doc. ## 180, 188, 209). For the reasons set forth below, the Motion is granted in part and denied in part.

**I.   Background**

    This matter is based upon two separate cases, the present case and 8:22-cv-145-VMC-TGW, which has been consolidated into the present case. (Doc. # 101; 8:22-cv-145 at Doc. # 102). The litigation between the parties has a long factual and procedural history, all of which the Court has recounted

in its prior orders. Thus, the Court will only recite the facts relevant to this Motion.

Omnia was founded by Troy Schifano and Steve Anderson in 2014. (Doc. # 183-3 at 9:20-21). PainTEQ was founded in 2013 by Sean LaNeve and Chris Girsch. (Doc. # 183-4 at 16:7-14). Soon after its founding, Charles Girsch acquired an ownership interest in and became involved with the operations of PainTEQ. (Doc. # 183-5 at 11:24-13:13). Both Omnia and PainTEQ are involved in the surgical device business, and they had a business relationship which turned sour.

Non-party Orthocision Inc. was also founded by Mr. Schifano and Mr. Anderson. (Doc. # 183-2 at 9:24-25). Orthocision owns U.S. Design Patent No. D905,232 ("D232 Patent"), U.S. Design Patent No. D922,568 ("D568 Patent"), U.S. Trademark Registration No. 4,646,387 ("'387 Registration"), U.S. Trademark Registration No. 4,646,388 ("'388 Registration"), Copyright Registration Number VA 2-209-321 ("'321 Registration"), and Copyright Registration Number VA 2-212-904 ("'904 Registration"). The D232 Patent was filed on June 11, 2020 (Doc. # 174-6), and the D568 Patent was filed on October 27, 2020. (Doc. # 174-7). However, both the D232 Patent and the D568 Patent claim priority as a continuation of the 879 Design Application, filed on December

30, 2019, which is a continuation-in-part of the U.S. Utility Application No. 14/668,976, filed on March 25, 2015, which issued as U.S. Patent No. 10,993,757 ("757 Patent"). (Doc. ## 174-6, 174-7).

Omnia is the exclusive licensee for each of these listed Orthocision items. (Doc. # 174-27). In a prior order, the Court determined that Omnia's status as exclusive licensee "establishes Omnia's statutory standing under the Lanham Act." (Doc. # 203 at 14). The Court also determined that the licensing agreement enabled Omnia to prosecute claims of copyright infringement dating back to when Orthocision began its ownership of the copyrights. (Id. at 19).

PainTEQ and Omnia began a business relationship around December 2016, as the parties discussed an agreement whereby PainTEQ would serve as the distributor of Omnia's PsiF™ product. (Doc. ## 174-40, 174-45, 174-46). As part of these discussions, Omnia sent PainTEQ, via email and package delivery, several items. (Id.). These items included a PsiF™ brochure, a PsiF™ surgical technique guide, images of various aspects of the product, and one of the PsiF™ cannulas. (Id.). PainTEQ claims that Omnia also provided CAD images of the canula, which Omnia disputes. (Doc. # 174 at 36-37; Doc. # 183 at 7-8).

After these initial discussions, the parties agreed to form a relationship and signed a written contract called the Stocking Agreement, which became effective on April 4, 2017. (Doc. # 174-34). Pursuant to the Stocking Agreement, PainTEQ served as the exclusive distributor for Omnia implants and instrumentation for SI joint fusion procedures in the interventional pain community. (Id.). The agreement contained provisions related to pricing structures, confidentiality, and non-circumvention. (Id.). The agreement also contained an Ohio choice-of-law provision. (Id.). On February 19, 2019, PainTEQ terminated the Stocking Agreement with Omnia. (Doc. # 174-35).

Months later, in September 2019, Omnia learned that PainTEQ had started to produce its own SI joint fusion products. (Doc. # 183-3 at 17:22-18:14). In March 2020, Mr. Anderson saw images of PainTEQ's canula design on social media and shared the images with Mr. Schifano. (Id. at 19:11-20:18). After viewing the images, Mr. Anderson and Mr. Schifano determined that the PainTEQ design copied its PsiF™ product. (Id.).

The PainTEQ design in question was the LinQ™ procedure, which PainTEQ created in 2019. (Doc. ## 174-1, 174-2, 174-3, 174-4, 174-5). The LinQ™ procedure is based upon U.S. Patent

No. 11,154,402 ("LaNeve Patent"), which PainTEQ owns. (Doc. # 174-2). The LaNeve Patent claims priority to the U.S. Provisional Patent Application No. 62/910,913 ("913 Provisional") (Doc. # 174-2), which was filed on October 4, 2019. (Doc. # 174-1). The below images display the D232 and D568 Patents next to PainTEQ's LinQ™ surgical cannula, which is accused of infringing each of Omnia's patents.





When first selling the LinQ™ procedure, PainTEQ created a corresponding surgical guide which included a picture and illustrations of the PsiF™ implant and referenced PsiF™ twice on the last page of the guide. PainTEQ distributed this guide to potential customers. (Doc. ## 174-33; 183-5 at 74:18-75:25). The last time PainTEQ distributed a guide which contained these PsiF™ images and references was February 24, 2020. (Doc. # 174-33). Nevertheless, some customers that received these guides still display the materials as of 2024. (Doc. # 183-3 at 270:10-272:1).

PainTEQ initiated this action against Omnia on April 8, 2020. (Doc. # 1 at 1). On December 4, 2020, PainTEQ filed its operative complaint, the second amended complaint, including the following claims against Omnia Medical: violation of the Florida Uniform Trade Secrets Act (Count One), tortious interference with a business relationship (Count Two), tortious interference with a contractual relationship (Count Three), and defamation (Count Four). (Doc. # 10). On December 18, 2020, Omnia Medical filed its answer and counterclaim. (Doc. # 20). The counterclaim includes the following causes of action against PainTEQ: patent infringement (Counts One and Two), copyright infringement (Counts Three and Four), trademark infringement (Counts Five and Six), breach of

contract (Count Seven), violations of the Ohio Deceptive Trade Practices Act (Count Eight), the Florida Deceptive and Unfair Trade Practices Act (Count Nine), and common law unfair competition (Count Ten). (Id.).

On January 18, 2022, Omnia initiated an action against PainTEQ and two of its agents, Sean LaNeve and Charles Girsch, in 8:22-cv-145. (8:22-cv-145 at Doc. # 1-1). Omnia alleged infringement of the D568 and '511 Patents (Counts Six and Seven) and also asserted twelve non-patent claims related to the Stocking Agreement. (Id.). The Court dismissed Counts One through Five and Counts Eight through Fourteen of Omnia's complaint for improper claim-splitting, based on the still-pending suit between the two parties in the present action. (Doc. # 45). Thus, only Omnia's patent claims remain.

For its part, PainTEQ answered Omnia's complaint on August 17, 2022, asserting four counterclaims, each for a declaratory judgment. (Doc. # 48). Counts One and Two seek a declaratory judgment of invalidity and non-infringement, respectively, of the '511 Patent. (Id.). Counts Three and Four seek a declaratory judgment of invalidity and non-infringement, respectively, of the D568 Patent. (Id.).

On January 30, 2023, the Court held a Markman hearing, where the parties discussed all matters related to claim

construction for each case. (8:20-cv-2805 at Doc. # 80; 8:22-cv-145 at Doc. # 91). On June 30, 2023, the Court entered its order on claim construction in each case. (8:20-cv-2805 at Doc. # 88; 8:22-cv-145 at Doc. # 91). For the D232 Patent, the Court identified "the dimensions of the barrel of the cannula, as well as the circularity and dimensions of the proximal end" as standing out from the underlying design as properly ornamental. (Doc. # 88 at 25). For the D568 Patent, the Court identified the "dimensions of the barrel of the cannula" as standing out from the underlying design as properly ornamental. (8:22-cv-145 at Doc. # 91 at 44).

On August 18, 2023, the Court held a joint Case Management Hearing, in which the Court granted the joint oral motion of the parties to consolidate the cases for trial purposes only. (8:20-cv-2805 at Doc. # 101; 8:22-cv-145 at Doc. # 102).

On August 27, 2024, the Court granted in part and denied in part PainTEQ's motion to dismiss, dismissing Count One of Omnia's counterclaim in the present case and Count Seven of Omnia's complaint in 8:22-cv-145, and dismissing with leave to amend Counts Three and Four of Omnia's counterclaim in the present case. (Doc. # 203).

On September 10, 2024, Omnia filed its amended counterclaim. (Doc. # 204). On September 24, 2024, PainTEQ filed a motion to strike, or alternatively to dismiss, Omnia's amended counterclaim. (Doc. # 206). According to PainTEQ, Omnia improperly pled an additional copyright claim by arguing that the continued display of the infringing copyrights by third parties is a violation. (Id.). Omnia responded on October 15, 2024. (Doc # 210). The Court will address the copyright claims on the merits in this order and resolve the motion to strike in a separate order.

Now, PainTEQ moves for summary judgment on Counts Two through Ten of Omnia's counterclaim in the present case and Count Six of Omnia's complaint in 8:22-cv-145. (Doc. # 174 at 1). Omnia has responded in opposition. (Doc. # 183). PainTEQ replied and filed two notices of supplemental authority. (Doc. ## 180, 188, 209). The Motion is now ripe for review.

## II.   **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude

a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex Corp., 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true, and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

III. **<u>Analysis</u>**

A. **<u>Patent Infringement Claims</u>**

PainTEQ raises a host of independent arguments for summary judgment on Omnia's two patent infringement claims: Count Two of its counterclaim in the present case and Count Six in 8:22-cv-145. The Court will organize its analysis by each individual argument.

1. **Prior Art**

Painteq argues that the LaNeve Patent predates Omnia's Patents, such that it is prior art to the D232 and D568 Patents. Thus, Painteq reasons, both the D232 and D568 Patents are invalid. (Doc. # 174 at 4). Alternatively, PainTEQ argues that the LaNeve Patent's status as prior art defeats any claim of infringement, because the LaNeve Patent necessarily anticipates the D232 and D568 Patents. (Id. at 9). Omnia counters that the LaNeve Patent is not prior art, both because Omnia's patents are entitled to priority dating to 2015 and because the LaNeve Patent's subject matter was obtained from Omnia. (Doc. # 183 at 17, 19).

"A person shall be entitled to a patent unless-- (1) the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention; or (2) the claimed invention was described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention." 35 U.S.C. § 102(a). However, "[a] disclosure shall not be prior art to a

12

claimed invention under subsection (a)(2) if . . . the subject matter disclosed was obtained directly or indirectly from the inventor or a joint inventor." Id. § 102(b)(2)(A).

Furthermore, "[a]n application for patent for an invention . . . previously filed in the United States . . . shall have the same effect, as to such invention, as though filed on the date of the prior application." 35 U.S.C. § 120. "Entitlement to priority under § 120 is a matter of law." In re Daniels, 144 F.3d 1452, 1454 (Fed. Cir. 1998). "In order to gain the benefit of the filing date of an earlier application under 35 U.S.C. § 120, each application in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112." Martek Biosciences Corp. v. Nutrinova, Inc., 579 F.3d 1363, 1369 (Fed. Cir. 2009). "Whether the written description requirement is met is a question of fact." Id. "Design and utility patents are each entitled to claim priority from the other." Id. In arguing that the later application is a continuation of the earlier application, "the applicant does not have to describe exactly the subject matter claimed, . . . . the description must clearly allow persons of ordinary skill in the art to recognize that [the applicant] invented what is

claimed." In re Daniels, 144 F.3d at 1454 (internal quotations omitted).

The LaNeve Patent claims priority to the 913 Provisional Patent(Doc. # 174-2), which was filed on October 4, 2019. (Doc. # 174-1). The D232 Patent was filed on June 11, 2020 (Doc. # 174-6), and the D568 Patent was filed on October 27, 2020. (Doc. # 174-7). However, both the D232 Patent and the D568 Patent claim priority as a continuation of the 879 Design Application, filed on December 30, 2019, which is a continuation-in-part of the U.S. Utility Application No. 14/668,976 filed on March 25, 2015, which issued as the 757 Patent. (Doc. ## 174-6, 174-7).

As an initial matter, the Court notes that PainTEQ does not dispute that the D232 and D568 Patents may claim priority to the 879 Design Application. See (Doc. # 174 at 8). Rather, PainTEQ disputes that the Patents may claim priority to the 757 Patent, arguing first that "the surgical canula design claimed in the D232 and D568 Patents is wholly absent from the 125 figures of the 757 Patent" (Id.), and second, that the Court should consider decisions by the USPTO as persuasive authorities. (Doc. # 188 at 3). Omnia responds by pointing to several figures and written descriptions contained within the

14

757 Patent to demonstrate the supposed similarities to the D232 and D568 Patents. (Doc. # 183 at 20).

The Court agrees with Omnia that the D232 and D568 Patents may claim priority to the 757 Patent. Omnia need not show that an exact replica of the surgical canula design claimed in the D232 and D568 Patents is present in the 757 Patent. See In re Daniels, 144 F.3d at 1454 ("[T]he applicant does not have to describe exactly the subject matter claimed.").

There are many similarities between the D232 and D568 Patents and the 757 Patent. The Court looks first to the written description of the 757 Patent. "The surgical tool may have a barrel or cannula through which the fusion implant is passed into the SI joint." (Doc. # 183-K at col. 12:15-18). "The insertable end of the working channel may have a rounded circular or oblong geometry." (Id. at col. 15:3-4). "The insertable end of the working channel may also include one or more prongs or tangs that extend beyond the end of the hollow barrel." (Id. at col. 15:21-23). The tangs "are positioned $180^0$ relative to one other on the hollow end of the barrel." (Id. at col. 15:31-33). The D232 and D568 Patents each refer to the subject matter as a "surgical cannula." (Doc. ## 174-6, 174-7). Figures 1 through 6 in both the D232 and D568

15

Patents show that the insertable end of the surgical cannula is rounded and includes two prongs, positioned $180^0$ from one another, which extend beyond the rest of the barrel. (Id.). From these figures, a "person of ordinary skill" could conclude that the D232 and D568 Patents derive from the written description in the 757 Patent. In re Daniels, 144 F.3d at 1454 (internal quotations omitted). As whether the written description requirement is met is a "question of fact" that must be determined by a jury, Martek Biosciences Corp., 579 F.3d at 1369, the Court concludes that, for the purposes of this Motion, the D232 and D568 Patents may claim priority to the 757 Patent.

The Court does not find the USPTO decisions cited by PainTEQ to be persuasive. (Doc. # 180). These decisions granted re-examination and did not render any final judgments. (Id.). Accordingly, these decisions do not affect the Court's analysis.

As the D232 and D568 Patents validly claim priority to the 757 Patent, their effective filing date is March 25, 2015. (Doc. # 183-K). The LaNeve Patent claims priority to an earlier patent, filed on October 4, 2019. (Doc. # 174-1). Accordingly, the LaNeve Patent cannot be prior art to the D232 and D568 Patents. See 35 U.S.C. § 102(a).

16

As the Court has reached this conclusion, the Court need not address Omnia's argument that the LaNeve Patent could not be prior art because its subject matter was obtained from Omnia. (Doc. # 183 at 17). Additionally, the Court need not consider PainTEQ's alternative argument that the LaNeve Patent being prior art to the D232 and D568 Patents would defeat Omnia's claims of infringement. (Doc. # 174 at 9).

## 2. **Whether the D232 and D568 Patents are Primarily Functional**

PainTEQ argues that the D232 and D568 Patents are invalid because they are primarily functional. (Doc. # 174 at 11). Omnia counters that the Court's claim construction orders already resolved this issue and argues that the Patents are not primarily functional.

PainTEQ must prove the invalidity of the D232 and D568 Patents by "clear and convincing evidence." Ethicon Endo-Surgery, Inc. v. Covidien, Inc., 796 F.3d 1312, 1328 (Fed. Cir. 2015). This standard is "stringent . . . as it applies to invalidating the design patents on grounds of functionality." Id. "If a particular design is essential to the use of an article, it cannot be the subject of a design patent." Id. "We have found designs to be essential to the use of an article when the claimed design is dictated by the

17

use or purpose of the article." Id. (internal quotations
omitted). "Design patents on such primarily functional rather
than ornamental designs are invalid." Id.

"[T]he determination of whether the patented design is
dictated by the function of the article of manufacture must
ultimately rest on an analysis of its overall appearance."
Berry Sterling Corp. v. Pescor Plastics, Inc., 122 F.3d 1452,
1455 (Fed. Cir. 1997). The Federal Circuit has "not mandated
applying any particular test for determining whether a
claimed design is dictated by its function and therefore
impermissibly functional. [The Federal Circuit has] often
focused, however, on the availability of alternative designs
as an important — if not dispositive — factor in evaluating
the legal functionality of a claimed design." Ethicon, 796
F.3d at 1329–1330. "Other appropriate considerations might
include: whether the protected design represents the best
design; whether alternative designs would adversely affect
the utility of the specified article; whether there are any
concomitant utility patents; whether the advertising touts
particular features of the design as having specific utility;
and whether there are any elements in the design or an overall
appearance clearly not dictated by function." Berry Sterling
Corp., 469 F.3d at 1456. This analysis "must also be performed

18

at a level of particularity commensurate with the scope of the claims." Ethicon, 796 F.3d at 1332. "If the patented design is primarily functional rather than ornamental, the patent is invalid. However, when the design also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional elements of the claimed article." Richardson v. Stanley Works, Inc., 597 F.3d 1288, 1293-94 (Fed. Cir. 2010) (internal citations omitted).

The Court finds that PainTEQ has failed to meet its burden to prove invalidity. See Ethicon, 796 F.3d at 1328 (party challenging validity needs to show "clear and convincing evidence"). To argue that the D232 and D568 Patents are primarily functional, PainTEQ focuses mostly on the ratio between the many aspects of the D232 and D568 Patents the Court found to be functional and the many fewer aspects of the Patents the Court found to be ornamental. (Doc. # 174 at 11). However, the Court must focus its analysis specifically on what it determined to be the claimed design in its claim construction orders. See Ethicon, 796 F.3d at 1315 (reversing a district court's ruling of invalidity based on functionality because it "us[ed] too high a level of abstraction, focusing on the unclaimed utilitarian aspects of

19

the underlying article instead of the claimed ornamental designs of that underlying article"). The identified ornamental elements are the proper focus of the Court's analysis, and the non-claimed elements of the Patents are irrelevant to the Court's determination of validity.

The only other argument raised by PainTEQ is that a design patent's validity cannot be based upon size or utility. (Doc. # 174 at 11). Both of PainTEQ's cited cases do not stand for this proposition. See Application of Zonenstein, 172 F.2d 599, 600 (C.C.P.A. 1949) (holding that a subsequent patent application was properly anticipated by an earlier patent when the subsequent application merely changed the "size or utility" of the earlier patent); Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd., 525 F. Supp. 3d 1145 (S.D. Cal. 2021), aff'd sub nom. Golden Eye Media USA, Inc. v. Evo Lifestyle Prod. Ltd., No. 2021-2096, 2022 WL 2232517 (Fed. Cir. June 22, 2022) (holding that the size and dimensions of the claimed design were not ornamental because alternative sizes and dimensions would negatively affect the utility of the overall design).

Accordingly, PainTEQ has failed to present any evidence or arguments that the Court may use to analyze validity. See Ethicon, 796 F.3d at 1329-1330 (explaining various factors a

court may consider when evaluating challenges to patent validity). Therefore, the Court rejects PainTEQ's challenges to the validity of the D232 and D568 Patents at this stage. See Id. (party challenging validity needs to show "clear and convincing evidence").

### 3. **Indefiniteness of the D568 Patent**

PainTEQ claims that the D568 Patent is invalid as indefinite, focusing upon alleged inconsistencies between several of the figures included in the Patent. (Doc. # 174 at 14). Omnia responds that the figures are not inconsistent. (Doc. # 183 at 26). The crux of the dispute is that Figures 5 and 7, which show side views of the second and fourth sides, use solid lines to depict the front and back faces of the barrel of the canula, while Figures 1 through 4, 6, 9, and 10 depict the front and back faces of the barrel of the canula using dashed lines. (Doc. # 174-7 at figs. 1-7, 9, 10). Whether the lines are solid or dashed is significant because solid lines generally signify parts of the structure that are being claimed, whereas dashed or broken lines signify parts of the structure that are not part of the claimed design. See In re Maatita, 900 F.3d 1369, 1372 (Fed. Cir. 2018) ("As is customary, the solid lines of Figure 1 show the claimed design, whereas the broken lines show structure that is not

21

part of the claimed design."). PainTEQ claims that this discrepancy makes it impossible to determine the contours and dimensions of the front and back faces. (Doc. # 174 at 14, 17).

In its claim construction Order, the Court deferred ruling on whether the D568 Patent is indefinite at the claim construction stage. (8:22-cv-00145 at Doc. # 91 at 30).

"A claim is invalid for indefiniteness under 35 U.S.C. § 112 if its language, when read in light of the specification and prosecution history, fails to inform skilled artisans about the scope of the invention with reasonable certainty." Ethicon, 796 F.3d at 1317 (citing Nautilus, Inc. v. Biosig Instruments, Inc., 572 U.S. 898, 910 (2014)). "A visual disclosure may be inadequate — and its associated claim indefinite — if it includes multiple, internally inconsistent drawings." In re Maatita, 900 F.3d at 1375. "Errors and inconsistencies between drawings do not merit a § 112 rejection, however, if they do not preclude the overall understanding of the drawing as a whole." Id. at 1375-76 (internal quotations omitted). "Indefiniteness is a question of law." Teva Pharms. USA, Inc. v. Sandoz, Inc., 789 F.3d 1335, 1341 (Fed. Cir. 2015). Again, PainTEQ must prove the

invalidity of the D232 and D568 Patents by "clear and convincing evidence." Ethicon, 796 F.3d at 1328.

The Court finds that the alleged inconsistencies between the two groups of figures do not render the Patent indefinite. Figures 5 and 7 depict the barrel of the canula from a different perspective than the perspective depicted in Figures 1 through 4, 6, 9, and 10. (Doc. # 174-7 at figs. 1-7, 9, 10). Figures 5 and 7 depict the second and fourth sides of the barrel. (Id.). As the figures are depicted on a two-dimensional surface, Figures 5 and 7 cannot depict a three-dimensional view of the other two sides of the barrel. (Id.). Thus, Figures 5 and 7 show a view of the barrel where the other two sides of the barrel are obscured. (Id.). In contrast, Figures 1 through 4, 6, 9, and 10 do not obscure those other two sides. (Id.). These figures each depict those sides with dashed lines. (Id.).

A skilled artisan who was seeking to understand the two sides in dispute would not look to Figures 5 and 7 to understand those sides because they obscure those sides. See Deckers Outdoor Corp. v. Romeo & Juliette, Inc., No. 2:15-CV-02812-ODW(CWX), 2016 WL 7017219 *4 (C.D. Cal. Dec. 1, 2016) ("[A] reasonable boot designer, in deciding whether the claimed design includes a notch, would look to the drawings

that provide the clearer — not the more obscured — view of that part of the boot."). Accordingly, the skilled artisan would rely upon Figures 1 through 4, 6, 9, and 10 to understand the two sides, and would be able to properly understand the scope of the D568 Patent. See Ethicon, 796 F.3d at 1317 ("A claim is invalid for indefiniteness under 35 U.S.C. § 112 if its language, when read in light of the specification and prosecution history, fails to inform skilled artisans about the scope of the invention with reasonable certainty."). As such, the Court concludes that the D568 Patent is not indefinite.

**4. Infringement of the D232 and D568 Patents**

PainTEQ argues that it is entitled to a summary judgment finding of noninfringement with its cannula design upon either the D232 or D568 Patents. (Doc. # 174 at 19). For its part, Omnia argues that the issue of infringement of both Patents must be resolved by a jury. (Doc. # 183 at 33). The Court finds that PainTEQ is entitled to summary judgment regarding the D568 Patent, but not for the D232 Patent.

"Design patent infringement is a question of fact, which a patentee must prove by a preponderance of the evidence." Richardson, 597 F.3d at 1295. "Summary judgment of non-infringement is appropriate when no reasonable fact-finder

could find the accused design substantially similar to the claimed design." High Point Design LLC v. Buyer's Direct, Inc., 621 F. App'x 632, 640-41 (Fed. Cir. 2015).

"The patentee must establish that an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." Id. "Where the claimed and accused designs are sufficiently distinct and plainly dissimilar, the patentee fails to meet its burden of proving infringement as a matter of law." Ethicon, 796 F.3d at 1335 (internal quotations omitted). "If the claimed and accused designs are not plainly dissimilar, the inquiry may benefit from comparing the claimed and accused designs with prior art to identify differences that are not noticeable in the abstract but would be significant to the hypothetical ordinary observer familiar with the prior art." Id.

"The trial court is correct to factor out the functional aspects of various design elements, but that discounting of functional elements must not convert the overall infringement test to an element-by-element comparison." Amini Innovation Corp. v. Anthony California, Inc., 439 F.3d 1365, 1372 (Fed. Cir. 2006); see also Crocs, Inc. v. Int'l Trade Comm'n, 598 F.3d 1294, 1306 (Fed. Cir. 2010) (considering whether a shoe

design had been infringed based upon how the ornamental elements changed the "overall effects of the design"); Lee v. Dayton-Hudson Corp., 838 F.2d 1186, 1189 (Fed. Cir. 1988) ("A device that copies the utilitarian or functional features of a patented design is not an infringement unless the ornamental aspects are also copied, such that the overall resemblance is such as to deceive." (internal quotations omitted)). "Minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." Crocs, 598 F.3d at 1303.

### i. The D232 Patent

The Court concludes that the D232 Patent and the accused design are neither "sufficiently distinct" nor "plainly dissimilar." Ethicon, 796 F.3d at 1335. The ornamental features of the D232 Patent are the dimensions of the barrel of the cannula, and the circularity and dimensions of the proximal end. (Doc. # 88 at 25). Looking at the overall design of the accused canula, a reasonable juror could infer that the dimensions of the barrel, the circularity of the proximal end, and the dimensions of the proximal end, are similar enough to the D232 Patent that one could be deceived into believing that they are the same. See Crocs, 598 F.3d at 1306 (requiring the Court to consider how the ornamental features

impact the overall design). Looking at the designs side-by-side as is proper, Id. at 1303-04, there is no clear difference between the two, such that a reasonable juror could find the designs to be "substantially similar." High Point Design LLC, 621 F. App'x at 640-41. Each proximal end is circular and appears to be of similar length and width. (Doc. ## 174-2, 174-6). The barrels appear to be of similar width and length, and while not exact, the Court cannot say that the dimensions are sufficiently different in their effect on the overall design such that no reasonable juror could find the designs to be the same. (Id.). Accordingly, the Court finds that a reasonable juror could find substantial similarities between the two designs and that summary judgment is improper as to the D232 Patent. High Point Design LLC, 621 F. App'x at 640-41.

PainTEQ directs the Court's attention to prior art to highlight how its accused design is dissimilar from the D232 Patent. (Doc. # 174 at 29-31). The Court notes that given its finding that the D232 Patent has an effective filing date of March 25, 2015, the "Compton" design is not prior art to the D232 Patent. (Doc. # 174-10). Even if it were prior art, the Compton design is quite different, as its barrel has numerous groove-like indentations, and the design lacks a cap-like

proximal end. (Id.). Turning to the "Schmeirer" design, the image placed by PainTEQ in its Motion (Doc. # 174 at 31) crops out the bottom part of the figure contained within the Patent. (Doc. # 174-11 at fig. 4). When viewing the figure in its entirety, the Court finds that the overall effects of the designs are quite different as the barrel of the Schmeirer design appears significantly shorter. (Id.). While this figure does contain a circular proximal end, that circular proximal end is absent from the other 52 figures. (Id.). The Court cannot say that such a small similarity to a prior art design would help an ordinary observer notice differences between the D232 Patent and the accused design. See Ethicon, 796 F.3d at 1335 ("If the claimed and accused designs are not plainly dissimilar, the inquiry may benefit from comparing the claimed and accused designs with prior art to identify differences that are not noticeable in the abstract but would be significant to the hypothetical ordinary observer familiar with the prior art.").

Furthermore, PainTEQ asks the Court to undertake an element-by-element comparison to identify differences between the accused design and the D232 Patent. (Doc. # 174 at 21-29). However, the Court is expressly directed not to analyze infringement through an "element-by-element comparison."

Amini Innovation Corp. 439 F.3d at 1372. Thus, the Court will not consider the differences asserted by PainTEQ which require a hyper-isolated level of analysis. In so far as PainTEQ has identified minor differences between the dimensions of the barrels and proximal ends, the Court finds that these differences are not readily apparent when considering the overall designs. See Crocs, 598 F.3d at 1303 ("Minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement.").

In two supplemental filings, PainTEQ asks the Court to consider two recent decisions by the USPTO. (Doc. ## 207, 209). The first filing relates to a recent USPTO decision finding that the LaNeve Patent is patentable because it does not infringe upon the D232 Patent. (Doc. # 207-1). However, this decision focused upon the patentability of LaNeve, rather than D232, and engaged in claim construction entirely distinct from the present case. (Id. at 13-29). Accordingly, the Court does not find any guidance from the USPTO's analysis.

The second supplemental filing is the USPTO's decision in its re-examination of the D232 Patent, concluding that the LaNeve Patent does not anticipate or infringe upon the D232

Patent. (Doc. # 209-1). The decision held that "the designs differ in regard to the forms of the tangs, the flat surfaces on the barrel of the '232 design, the transition from the flat surfaces to the distal end, and the visible guide slot extending to the distal end on '402." (Id. at 4). This analysis does not address the elements of the D232 Patent that the Court determined to be within the scope of the Patent in its claim construction order. (Doc. # 88). Therefore, the Court does not find any guidance from the USPTO's decision.

As the Court has concluded that reasonable jurors could find substantial similarities between the D232 Patent and the accused design, the Court denies PainTEQ's Motion as to the D232 Patent.

### ii. **The D568 Patent**

Turning to the D568 Patent, the Court's analysis differs from the D232 Patent. The scope of ornamental features for the D568 Patent is narrower than the scope of the D232 Patent, as it covers just the dimensions of the barrel of the cannula. (8:22-cv-145 at Doc. # 91 at 44). As the Court already explained, the dimensions of the barrel are not exact between the D568 Patent and the accused design. (Doc. ## 174-2, 174-7). Unlike with the D232 Patent, the dimensions of the canula are the entire scope of the D568 Patent. (Id.). Thus, the

Court will focus upon the effect that the differing dimensions of the barrels have on the overall designs, unlike with the D232 Patent when the Court was considering multiple claimed elements. See Amini Innovation Corp., 439 F.3d at 1372 ("The trial court is correct to factor out the functional aspects of various design elements, but that discounting of functional elements must not convert the overall infringement test to an element-by-element comparison.").

The D568 Patent's barrel is noticeably longer than the accused design's barrel, which differentiates the design of the overall patents from one another. (Doc. ## 174-2, 174-7). The entire scope of the D568 Patent is the dimensions of the barrel, but the differing dimensions between the two barrels creates two cannulas that are fully different in size. (Id.). Accordingly, no reasonable juror could conclude that the designs are "substantially similar." High Point Design LLC, 621 F. App'x at 640-41. Therefore, a finding of noninfringement of the D568 Patent by the accused design is appropriate. Id. The Court grants summary judgment for PainTEQ on Count Six of Omnia's complaint in 8:22-cv-145-VMC-TGW.

5. **Damages for Patent Infringement**

PainTEQ argues that Omnia is legally precluded from seeking PainTEQ's profits from selling its canula because it claims it has never sold the canula. (Doc. # 174 at 32-33). Omnia responds that the canula is a necessary component of products PainTEQ sells, and thus, it may recover damages for those profits. (Doc. # 183 at 41-43). The Court agrees with Omnia that it may recover damages for profits made by PainTEQ.

"Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties." 35 U.S.C. § 289. "[T]he term 'article of manufacture' is broad enough to embrace both a product sold to a consumer and a component of that product, whether sold separately or not. Thus, reading 'article of manufacture' in § 289 to cover only an end product sold to a consumer gives too narrow a meaning to the phrase." Samsung

Elecs. Co. v. Apple Inc., 580 U.S. 53, 62 (2016) (quoting 35 U.S.C. § 289).

The Court finds that the surgical cannula is an article of manufacture within the LinQ™ surgical procedure. In Mr. LaNeve's deposition testimony, he was asked if PainTEQ "ever commercialized any cannula design." (Doc. # 183-4 at 100:13-14). Mr. LaNeve responded: "[c]ommercialized a cannula design? No. We would only include a cannula in an instrument set." (Id. at 100:15-16). Under Mr. LaNeve's own account then, PainTEQ was including the accused canula in an end-product that it was selling. As such, the accused canula is encompassed within § 289 and Omnia may recover damages for PainTEQ's profits. See Samsung, 580 U.S. at 62 ("Article of manufacture is broad enough to embrace both a product sold to a consumer and a component of that product" (internal quotations omitted)).

### B. Copyright Claims

#### 1. Standing

PainTEQ first raises a number of arguments related to Omnia's standing to assert its copyright claims in Counts Three and Four of its counterclaim. (Doc. # 174 at 38-40). The Court already addressed these arguments in its order on PainTEQ's motion to dismiss. (Doc. # 203 at 14-20). In that

order, the Court concluded that "[b]y denoting the right to sue for past infringements, the ELA empowered Omnia to assert claims for infringements dating back to when Orthocision had obtained the rights to the copyrights — July 3, 2020, and July 11, 2020, for each copyright respectively." (Id. at 19). The arguments presented by PainTEQ in its Motion are largely similar to those raised in its motion to dismiss. (Doc. # 160). In so far as the arguments are repeated, the Court refers the parties to its order on the motion to dismiss (Doc. # 203), and avoids a repetition of its rulings.

PainTEQ does raise one new argument in relation to standing, asserting that the ELA contained a future promise to provide Omnia with the right to sue for past infringements rather than an immediately transferred assignment of that right. (Doc. # 174 at 39-40). In support, PainTEQ points to paragraph 6.1(a) of the ELA, which states: "Licensor shall provide Licensee with the sole right, but not the obligation, to Prosecute Intellectual Property applications and issued Intellectual Property, in Licensee's sole discretion." (Doc. # 174-22 at 4-5). PainTEQ claims this represented a future intention to provide the right to sue for infringements. (Doc. # 174 at 39-40). Omnia responds that PainTEQ both misinterprets that paragraph of the ELA and fails to properly

give effect to the contract as a whole. (Doc. # 183 at 45-47). The Court agrees with Omnia.

Under Ohio Law, "[t]he intent of each party is to be gathered from a consideration of the contract as a whole. . . . If the terms of the contract are clear and precise, the contract is not ambiguous and the trial court is not permitted to refer to any evidence outside of the contract itself." DN Reynoldsburg, LLC v. Maurices Inc., 225 N.E.3d 454, 459 (Ohio Ct. App. 2023); see also (Doc. # 174-22 at 6) (containing Ohio choice-of-law-provision).

Reading the ELA as a whole, the Court is persuaded that the contract was intended to effectuate an immediate transfer of the right to sue for past infringements. The Court reads "shall provide" as signifying what Orthocision was contracting to do immediately upon the "effective date" of the contract. (Doc. # 174-22 at 4-5, 8). The contract contains no other provisions which would explain when a future transfer could occur. See Omni MedSci, Inc. v. Apple Inc., 7 F.4th 1148, 1152 (Fed. Cir. 2021) (holding that when an assignment of rights deriving from "shall be the property of" was accompanied by "conditions" that explained when the assignment may occur, that assignment could be read as a future intention to assign rights). A fair reading of the

whole ELA demonstrates that the assignment occurred immediately upon the contract's implementation.

Even if the terms of the ELA are ambiguous, the Court finds that evidence beyond the contract demonstrates the parties' intent to immediately assign those rights. See DN Reynoldsburg, LLC, 225 N.E.3d at 460 ("When the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement give the plain language special meaning, extrinsic evidence can be used to ascertain the intent of the parties."). In Mr. Schifano's deposition, he was asked whether "[the ELA] broadly assigns all of Orthocision's intellectual property that existed as of the date of that assignment to Omnia." (Doc. # 183-2 at 51). He responded "[t]o my knowledge, yes," and later added "being that I was Orthocision and Omnia at the same time, the kind of mental agreement was that it was always going to happen." (Id. at 51-52). Accordingly, even if the terms of the contracts are ambiguous, the deposition of Mr. Schifano persuades the Court that the parties intended the assignment to be immediate.

### 2. **Damages**

PainTEQ puts forth several arguments that Omnia cannot establish damages for the alleged copyright infringement.

(Doc. # 174 at 40-45). The Court agrees with PainTEQ and grants summary judgment to PainTEQ on Counts Three and Four of Omnia's counterclaim.

"The initial burden placed on the copyright holder to show some causal connection is low. However, a plaintiff may not seek gross revenues based entirely on a speculative connection to the plaintiff's claim." Yellow Pages Photos, Inc. v. YP, LLC, 856 F. App'x 846, 865 (11th Cir. 2021) (internal quotations and citations omitted). "To recover actual damages, [the plaintiff] must demonstrate a 'causal connection' between Defendants' infringement and an injury to the market value of the copyrighted [material] at the time of the infringement." Lorentz v. Sunshine Health Prod., Inc., No. 09-61529-CIV, 2010 WL 11492992, at *4 (S.D. Fla. Sept. 7, 2010), report and recommendation adopted, No. 09-61529-CIV, 2010 WL 11493070 (S.D. Fla. Nov. 15, 2010) (quoting Montgomery v. Noga, 168 F.3d 1282, 1294 (11th Cir. 1999)). "Actual damages are often measured by the revenue that the plaintiff lost as a result of the infringement, including lost sales, lost opportunities to license, or diminution in the value of the copyright." Thornton v. J Jargon Co., 580 F. Supp. 2d 1261, 1276 (M.D. Fla. 2008) (internal quotations and citations omitted). In addition, "a claim for lost profits

37

may include a retroactive license fee measured by what the plaintiff would have earned by licensing the infringing use to the defendant." Id.

In the Court's order on PainTEQ's motion to dismiss, the Court held that "Omnia does not have statutory standing to sue for infringements prior to July 3, 2020, for Count Three and July 11, 2020, for Count Four." (Doc. # 203 at 18). PainTEQ has provided emails sent to potential customers on February 24, 2020, which it claims is the last point that it disseminated materials which contain infringed copyrights. (Doc. # 174-33). And Mr. LaNeve testified that PainTEQ removed the infringing copyrights from PainTEQ's marketing materials around February 2020. (Doc. # 183-4 at 154:19-25). Omnia does not dispute any of these facts, but adds, through Mr. Schifano's deposition testimony, that some physicians and surgery centers which received the infringing materials still display the materials as of 2024. (Doc. # 183-3 at 270:10-272:1).

The crux of the issue is that, based on all the evidence in the record, PainTEQ had ceased disseminating the copyrighted material by the time in which Omnia obtained the right to sue for infringements of the copyrighted material. Omnia thus cannot claim any damages from PainTEQ's

dissemination of the copyrighted material. See Lorentz, No. 09-61529-CIV, 2010 WL 11492992, at *4 ("To recover actual damages, [plaintiff] must demonstrate a causal connection between Defendants' infringement and an injury to the market value of the copyrighted photographs **at the time of the infringement**." (emphasis added) (internal quotations omitted)). Damages are tied to what occurred at the time of the infringement, but Omnia cannot prosecute claims based on the time of the infringement. See Id.

Omnia argues that there were and still are continuing damages caused by the infringement through the continued placement of the infringing material in doctor's offices. (Doc. # 183 at 50). However, this claim for damages is too speculative. See Yellow Pages Photos, Inc., 856 F. App'x at 865 ("[A] plaintiff may not seek gross revenues based entirely on a speculative connection to the plaintiff's claim."); Thornton, 580 F.Supp.2d at 1276-77 (holding that copyright owner whose copyright was used in a theater program could not claim a royalty of the theater's sales because the link was too speculative); Andreas v. Volkswagen of Am., Inc., 336 F.3d 789, 797-99 (8th Cir. 2003) (holding that plaintiff whose copyright was impermissibly included in a car commercial could establish sufficient causal connection to sales of that

car during the period in which the commercial aired). Even if PainTEQ is receiving continued notoriety from consumers through the continued placement of the infringing materials, that notoriety alone would be insufficient to establish a causal connection. See <u>Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.</u>, 196 F.3d 1366, 1375 (Fed. Cir. 1999) (holding that plaintiff has burden to show how copyright infringement leads to sales of the end product); <u>Bus. Trends Analysts, Inc. v. Freedonia Grp., Inc.</u>, 887 F.2d 399, 404 (2d Cir. 1989) (holding that "some gain in market recognition" is insufficient to establish a causal connection because "that gain cannot be attributed to the [infringing material] alone").

Even though Omnia's burden is "low," it has failed to put forth any non-speculative evidence of damages suffered from PainTEQ's infringement after July 3, 2020, for Count Three and July 11, 2020, for Count Four. <u>Yellow Pages Photos, Inc.</u>, 856 F. App'x at 865. Accordingly, the Court grants summary judgment for PainTEQ on Counts Three and Four of Omnia's counterclaims. See <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d at 593-94 ("When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions,

40

answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." (quoting <u>Celotex Corp.</u>, 477 U.S. at 324)).

### C. **Trademark claims**

### 1. **Standing**

PainTEQ raises a number of arguments that Omnia lacks statutory standing to prosecute its trademark infringement claims in Counts Five and Six of its counterclaim. (Doc. # 174 at 46-50). In the Court's order on PainTEQ's motion to dismiss, the Court already addressed many of these arguments. (Doc. # 203 at 11-14). In that order, the Court held that Omnia possesses statutory standing under the Lanham Act to prosecute its trademark infringement claims in Counts Five and Six. (<u>Id.</u> at 14).

The only new argument raised by PainTEQ is the same argument it made to challenge Omnia's copyright standing - that the language of the ELA only created a future intention to assign intellectual property rights. (Doc. # 174 at 49). The Court already analyzed this language above and concluded that the language of the ELA provided for an immediate transfer of the intellectual property rights.

41

## 2. **Damages**

PainTEQ asserts that it is entitled to summary judgment on Omnia's trademark-infringement claims because Omnia cannot recover any damages for the supposed infringement. (Id. at 50-53). Specifically, PainTEQ asserts that Omnia cannot claim actual damages or disgorgement of profits, and that its infringement calculations are improperly speculative. (Id.). The Court, however, agrees with Omnia that it can establish damages, and thus, PainTEQ is not entitled to summary judgment on Omnia's trademark infringement claims.

"[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 133 (2014). "The law in this Circuit is well settled that a plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits under § 35 of the Lanham Act. A plaintiff shall be entitled to a defendant's profits if any of three circumstances exist: (1) the defendant's conduct was willful and deliberate, (2) the defendant was unjustly enriched, or (3) it is necessary to deter future

42

conduct." Tiramisu Int'l LLC v. Clever Imports LLC, 741 F. Supp. 2d 1279, 1288 (S.D. Fla. 2010) (internal quotations and citations omitted).

"[D]amages for trademark infringement may include (1) the defendant's profits, (2) any damages sustained by the plaintiff, and (3) the cost of the action." Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1564 (11th Cir. 1986). "Where the wrong is of such a nature as to preclude exact ascertainment of the amount of damages, plaintiff may recover upon a showing of the extent of damages as a matter of just and reasonable inference, although the result may be only an approximation." Id. at 1565 (quoting Bangor Punta Operations v. Universal Marine Company, 543 F.2d 1107, 1110-11 (5th Cir. 1976)). "In making a damage assessment, the district court may allow recovery for all elements of injury to the business of the trademark owner proximately resulting from the infringer's wrongful acts." Id. at 1565 (internal quotations omitted).

Here, the parties do not dispute that PainTEQ distributed a surgical guide to potential customers which contained the PsiF trademark, which is the subject of the '387 and '388 trademark registrations. (Doc. # 174 at 35; Doc. # 183 at 15). Indeed, a surgical guide disseminated from

PainTEQ to a potential customer on February 24, 2020, plainly includes the term "PsiF" twice on the last page. (Doc # 174-33). The guide instructs surgeons to "insert PsiF" as the final step in the procedure, and then explains further that the "PsiF allograft bone is loaded onto inserter . . . ." (Id.). PainTEQ claims this was the last date on which the infringing surgical guides were disseminated. (Doc. # 174 at 35). Omnia does not concede that PainTEQ is correct about the exact date that the dissemination ceased, but does concede that the dissemination ceased at some point in 2020. (Doc. # 183 at 15). Omnia claims that surgeons and medical groups that received the infringing guide ultimately purchased the LinQ™ procedure after receiving the guide, and these purchases can be attributed to the inclusion of the PsiF trademark. (Doc. # 183 at 15, 53-54).

The Court first concludes that there is no evidence in the record that PainTEQ's conduct was "willful and deliberate." Tiramisu Int'l LLC, 741 F. Supp. 2d at 1288. In his deposition, Mr. LaNeve referred to the inclusion of the trademarks as a "mistake." (Doc. # 183-4 at 155:23-156:5). There is no evidence in the record that the inclusion of the trademarks was anything beyond an oversight. Accordingly, the

44

Court finds that PainTEQ's conduct cannot be deemed willful or deliberate.

Similarly, the Court concludes that there is no evidence in the record that providing damages is "necessary to deter future conduct." <u>Tiramisu Int'l LLC</u>, 741 F. Supp. 2d at 1288. As the parties have agreed, the dissemination of the infringing guides ceased in 2020. Accordingly, there is little risk that PainTEQ would again infringe upon the trademarks.

However, the Court does conclude that Omnia can show that PainTEQ was "unjustly enriched" through its infringement upon Omnia's trademarks. <u>Id.</u> A reasonable juror could find that a customer receiving the infringing surgical guide would view the last page's inclusion of the PsiF trademark as implying that Omnia's products were included within PainTEQ's product. (Doc. # 174-33). PainTEQ's attempted discounting of the inclusion of the trademark as being "on the bottom of the last page" is unpersuasive. (Doc. # 174 at 50). Rather, the guide makes the inclusion of the Omnia product out to be the ultimate step in the surgical process. A reader of the guide would reasonably conclude that the Omnia product was an integral element of PainTEQ's product.

45

At this point, PainTEQ was attempting to break into the SI-joint repair industry, as the guide accompanied PainTEQ's first generation of its LinQ™ product. (Id. at 35). By including the Omnia trademarks in the guide, a recipient could attribute Omnia's reputation within the industry to this new product created by PainTEQ. Such an attribution would result in an unjust enrichment by PainTEQ. See Optimum Techs., Inc., 217 F. App'x at 903 ("Unjust enrichment occurs when an infringer has enriched themselves by tapping the reputation and good will of the infringed." (internal quotations omitted)); Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1520 (11th Cir. 1990) ("When an unaffiliated lodge imitates a franchise name, it is exploiting the goodwill of that chain."). Accordingly, such unjust enrichment entitles Omnia to claim damages from PainTEQ for its infringement of its trademarks. Tiramisu Int'l LLC, 741 F. Supp. 2d at 1288.

PainTEQ's arguments that any damages award would be based upon improper speculation are unfounded. (Doc. # 174 at 53). Omnia does not need to prove exactly how many customers bought the PainTEQ product as a direct result of the trademark infringement in the accompanying surgical guide. See Ramada Inns, Inc., 804 F.2d at 1564 ("[P]laintiff may recover upon a showing of the extent of damages as a matter of just and

46

reasonable inference, although the result may be only an approximation."). Rather, Omnia just needs to show that the infringement was a proximate cause of customers' purchasing of the PainTEQ product. See Id. at 1565 (holding that plaintiffs need only show proximate cause to obtain damages for trademark infringement). As discussed above, the Court finds that reasonable jurors could conclude that customers chose to purchase the PainTEQ product due to the mistaken perception caused by the inclusion of the PsiF trademark that Omnia was somehow involved with the PainTEQ product. Accordingly, Omnia can establish a reasonable basis upon which to estimate damages.

The Court is also unpersuaded by PainTEQ's argument that it is entitled to summary judgment on Omnia's ability to claim a disgorgement of PainTEQ's profits. (Doc. # 174 at 53). "In order to establish the amount of profits to be disgorged, a plaintiff must establish the infringer's gross sales of the product; it is then up to the defendant to refute that amount, and/or to proffer costs that should be deducted from the gross sales." Tiramisu Int'l LLC, 741 F. Supp. 2d at 1291. Here, Omnia has put forth evidence of PainTEQ's gross sales. (Doc. # 174-25 at 97:13-98:17). In response, PainTEQ's attempt to refute that amount is based upon its general argument that

47

sales of the product were not tied to the inclusion of the PsiF trademark in the surgical guide. (Doc. # 174 at 53). The Court has already concluded that a factual dispute remains regarding whether PainTEQ's infringement proximately caused its subsequent sales. Therefore, granting summary judgment for PainTEQ on Omnia's claim for a disgorgement of PainTEQ's profits would be improper. See Samples ex rel. Samples, 846 F.2d at 1330 ("If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment.").

As the Court has determined both that Omnia has standing to pursue its trademark infringement claims in Counts Five and Six of its counterclaim and that it can establish damages for each, the Court denies summary judgment for PainTEQ on these counts.

### D. **Unfair Competition Claims**

PainTEQ asserts that it is entitled to summary judgment on Omnia's claims of unfair competition based upon Florida and Ohio law, as well as common law. (Doc. # 174 at 53-57). Its argument is that Omnia's claims are preempted by its claims of patent, copyright, and trademark infringement. (Id.). Omnia counters that PainTEQ takes too narrow a view of

48

its unfair competition claims, such that PainTEQ ignores the claims' focus beyond the infringement of intellectual property. (Doc. # 183 at 54-57).

An unfair competition claim is pre-empted when the claim is based entirely on patent, copyright, or trademark infringement. See Lanard Toys Ltd. v. Dolgencorp LLC, 958 F.3d 1337, 1347 (Fed. Cir. 2020) ("[T]he [state and common law] unfair competition claims fail because they are based entirely on [plaintiff's design patent, copyright, and trade dress] infringement claims."); Tropical Paradise Resorts, LLC v. JBSHBM, LLC, No. 18-CV-60912, 2018 WL 4932282, at *5 (S.D. Fla. Oct. 10, 2018) ("If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law. If, by contrast, the conduct is not so protected or governed, then the remedy is not preempted." (internal quotations and citations omitted)); M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1494 (11th Cir. 1990) ("A claim for unfair competition based upon allegations of copying, and in the absence of proof of any element of unfair competition other than copying, is clearly pre-empted by the Act."); Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d

49

641, 652-53 (11th Cir. 2007) (holding that defendant was entitled to summary judgment when the unfair competition claim was based entirely on a trademark infringement claim for which the district court was granting summary judgment for the defendant).

The Court agrees with PainTEQ. Omnia bases its unfair competition claims on two forms of conduct by PainTEQ: first, the unauthorized usage of Omnia's patents, copyrights, and trademarks to create the misperception that the parties were affiliated; and second, the publishing and disseminating of false representations of fact by PainTEQ about Omnia. (Doc. # 20 at 45-49). These false representations are allegedly "statements that PainTEQ is not infringing, and has not infringed, the intellectual property rights of Omnia Medical, when, in truth and in fact, PainTEQ has done exactly that; and . . . statements that Omnia Medical is infringing, and has infringed, the intellectual property rights of PainTEQ, when, in truth and in fact, Omnia Medical has done no such thing." (Id. at 46).

However, PainTEQ correctly notes that there is no evidence in the record that PainTEQ has made either of these statements. (Doc. # 174 at 57). Omnia does not refute this point directly, but instead emphasizes that its claim

included the qualifier that PainTEQ's false representations "are not limited to the above-referenced statements." (Doc. # 20 at 46; Doc. # 183 at 57). While Omnia is correct that its unfair competition claims did include this qualifier, Omnia does not point to any evidence in the record of these other false representations. (Doc. # 183 at 56-57).

Accordingly, there is no factual dispute that PainTEQ did not make the identified statements in the claims, and Omnia has not provided any evidence of other statements. See Hickson Corp. 357 F.3d at 1260 (holding that the moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial). On such a record, the Court concludes that PainTEQ is entitled to summary judgment on this portion of Omnia's state unfair competition claims. See Jeffery v. Sarasota White Sox, Inc., 64 F.3d at 593-94 ("When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings . . . [to] designate specific facts showing that there is a genuine issue for trial." (internal quotations omitted)).

The only alleged conduct of Omnia's state unfair competition claims remaining then is PainTEQ's unauthorized usage of Omnia's patents, copyrights, and trademarks. (Doc.

# 20 at 45-49). As such, the success of the claims depends upon whether Omnia can prove its separately pleaded claims for patent, copyright, and trademark infringement. Accordingly, Omnia's unfair competition claims are preempted. The Court grants summary judgment for PainTEQ on Counts Eight, Nine, and Ten of Omnia's counterclaim.

### E. Breach of Contract

PainTEQ asserts that it is entitled to summary judgment on Omnia's breach of contract claim both because it has not breached the Stocking Agreement, and because Omnia cannot establish any damages for the alleged breach. (Doc. # 174 at 57-61). Omnia responds that it can establish both that PainTEQ breached the Stocking Agreement and that it suffered damages from the breach. (Doc. # 183 at 57-63).

#### 1. Alleged breaches

Omnia has pointed to multiple ways that PainTEQ breached the contract: by misrepresenting to Omnia the amount it charged for the PsiF™ procedure; by stealing confidential information from Omnia; and by violating the non-circumvention provision of the agreement. (Id.). The Court will evaluate each of these alleged breaches in turn.

## I. **Misrepresentation of prices**

PainTEQ does not address Omnia's argument that it breached the Stocking Agreement by misrepresenting to Omnia the amount it was charging, and then pocketing the difference. (Doc. # 183 at 11-13, 57). Accordingly, PainTEQ is not entitled to summary judgment on the entirety of Omnia's breach of contract claim. See Fed. R. Civ. P. 56(a) (summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

## II. **Confidential Information**

PainTEQ argues that all of the supposedly confidential information was already publicly available before the agreement, and thus, was not confidential as defined by the agreement. (Doc. # 174 at 57-60). Omnia counters that the information was confidential as defined by the agreement. (Doc. # 57 at 61).

The Stocking Agreement's confidentiality provision covered "[a]ll confidential or proprietary information furnished by PAINTEQ to OMNIA . . . or by OMNIA to PAINTEQ . . . during the term of the agreement." (Doc. # 174-34 at 4). However, excluded from the provision was information that "at the time of disclosure is, or thereafter lawfully becomes,

53

part of the public domain through no fault, act, or omission of the receiving party, its employees, officers or PAINTEQs; or was otherwise in the receiving party's lawful possession prior to disclosure as shown by its written records . . . ." (Id.). The Stocking Agreement was effective as of April 4, 2017. (Id. at 6). Prior to that date, PainTEQ claims that Omnia provided PainTEQ with "a copy of the PsiF Surgical Technical Guide, color photographs of the instruments, CAD images of the instruments, post-operative imaging of the implant, and an image and detailed description (including dimensions) of the implant. (Doc. # 174 at 36-37). Omnia only disputes that it sent PainTEQ CAD images of the instruments. (Doc. # 183 at 7-8).

Omnia asserts that the parties had a confidential relationship before the agreement was memorialized, such that the information shared during that period was confidential. (Doc. # 183 at 59-61). In support, Omnia cites only to Biodynamic Techs., Inc. v. Chattanooga Corp., 644 F. Supp. 607, 612 (S.D. Fla. 1986), in which the parties had engaged in licensing negotiations, during which one party exchanged an entire patent application to the other. After the negotiations broke down, the exchanging party discovered that the receiving party was improperly using the information it

had obtained during the negotiations. Id. The court held that "[t]here is no dispute that in the spirit of trust and confidence, the contents of the entire patent application were revealed. All of the information imparted was the direct result of the license negotiations. These negotiations not only created the confidential relationship, but also restricted the right of the Defendant to use the disclosures solely for the purposes for which they were made." Id. However, Biodynamics is distinguishable because there the parties ended up not forming a business relationship, and the plaintiff was alleging trade secret misappropriation and unfair competition. Id.

In contrast, Omnia and PainTEQ's negotiations led to the Stocking Agreement. In the Stocking Agreement, the parties agreed to a confidentiality provision, in which the parties could have included the previously disclosed information. Instead, the Stocking Agreement does the exact opposite, specifically excepting previously disclosed information from the provision's protection. (Doc. # 174-34 at 4). On such a record, the Court finds no basis to conclude that the information exchanged by Omnia prior to the Stocking Agreement was entitled to confidential status. Accordingly, the Court grants summary judgment to PainTEQ on Omnia's breach

of contract claim in so far as it is based upon the disclosure of confidential information.

### III. <u>Non-circumvention</u>

PainTEQ argues that Omnia may not assert a claim for a breach of the non-circumvention provision because it never pled this claim. (Doc. # 174 at 61). Omnia counters that PainTEQ takes an "impermissibly narrow" interpretation of its claim, as the claim alleges that PainTEQ improperly sold its LinQ™ procedure, which should be interpreted as occurring during the non-circumvention period. (Doc. # 183 at 61-62). The Court agrees with PainTEQ.

Omnia identified several ways in its breach-of-contract claim in which PainTEQ allegedly breached the Stocking Agreement: "by misrepresenting to Omnia the sales price actually charged its customers for PsiF products, and continuing to use literature, marketing information, and other confidential or proprietary information in a manner inconsistent with the terms of the Stocking Agreement . . . ." (Doc. # 20 at 45). The claim does not specifically refer to any sales of the LinQ™ procedure, nor to the non-circumvention provision. True, the claim does "incorporate and reallege" the facts already stated in the counterclaim. (<u>Id.</u> at 44). While the rest of the counterclaim does refer to

sales of the LinQ™ procedure at various points in time, the non-circumvention provision of the Stocking Agreement is never mentioned.  (Id.). Therefore, Omnia has not pled a violation of the non-circumvention provision as part of its breach of contract claim, and the Court grants summary judgment for PainTEQ on Omnia's breach of contract claim in so far as it is based upon this alleged violation.

### 2. Damages

As the Court has determined that Omnia may only pursue its breach of contract claim in so far as it is based upon PainTEQ's misrepresentation of prices, the Court needs only to determine if Omnia can establish damages for this breach. As noted, PainTEQ entirely neglected this aspect of Omnia's breach of contract claim. Accordingly, the Court denies summary judgement for PainTEQ on Omnia's breach of contract claim, as based upon PainTEQ's alleged misrepresentation of prices. See Fed. R. Civ. P. 56(a) (Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Plaintiff PainTEQ, LLC's Motion for Summary Judgment (Doc. # 174) is **GRANTED** in part and **DENIED** in part.

(2)   Summary judgment is granted in favor of PainTEQ on Counts Three, Four, Eight, Nine, and Ten of Defendant Omnia Medical, LLC's counterclaim in this case, as well as on Count Six of Omnia's complaint in 8:22-cv-145-VMC-TGW.

(3)   The case will proceed to trial on Counts Two, Five, Six, and Seven of Omnia's counterclaim.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 21st day of October, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE