UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAINTEQ, LLC,

       Plaintiff,

v.                            Case No. 8:20-cv-2805-VMC-AAS

OMNIA MEDICAL, LLC,

       Defendant.

_____/

**ORDER**

This matter comes before the Court upon Plaintiff and Counterclaim-Defendant PainTEQ, LLC's Motion to Exclude Omnia's Damages Expert. (Doc. # 179). Defendant and Counterclaimant Omnia Medical, LLC responded in opposition on June 6, 2024. (Doc. # 184). PainTEQ filed one notice of supplemental authority. (Doc. # 216). For the reasons set forth below, the Motion is granted in part and denied in part.

**I.   Background**

This matter is based upon two separate cases, the present case and 8:22-cv-145-VMC-TGW, which has been consolidated into the present case. (Doc. # 101; 8:22-cv-145 at Doc. # 102). The litigation between the parties has a long factual and procedural history, all of which the Court has recounted

1

in its prior orders. Thus, the Court will only recite the facts relevant to this Motion.

Both Omnia and PainTEQ are involved in the surgical device business, and they had a business relationship which turned sour.

Non-party Orthocision Inc. owns several copyrights, trademarks, and patents (Doc. ## 179-6, 179-7, 179-19, 179-20, 179-29, 179-30), and Omnia is the exclusive licensee for these copyrights, trademarks, and patents per a licensing agreement. (Doc. # 160-4). Orthocision created and Omnia now produces the PsiF™ product which incorporates the D232 Patent. (Doc. # 183-2 at 16:2-12). In a prior order, the Court found the scope of the D232 Patent to be "the dimensions of the barrel of the cannula, as well as the circularity and dimensions of the proximal end." (Doc. # 88 at 25).

PainTEQ created the LinQ™ procedure in 2019. (Doc. ## 174-1, 174-2, 174-3, 174-4, 174-5). Omnia alleges that the surgical canula contained within the LinQ™ procedure infringes upon the D232 Patent. (Doc. # 20 at 30-33).

When first selling the LinQ™ procedure, PainTEQ created and distributed a corresponding surgical guide which included a picture and illustrations of the PsiF™ implant and

referenced PsiF™ twice on the last page of the guide. (Doc. ## 174-33; 183-5 at 74:18-75:25).

Omnia obtained an expert, Graham D. Rogers, "to analyze accounting, financial, and other business data for purposes of assisting counsel in identifying damages, if any, arising from Omnia Medical, LLC['s] litigation against PainTEQ, LLC, Sean LaNeve, and Charles Girsch." (Doc. # 183 at Ex. I at ¶ 4). Per his report, Mr. Rogers is "specifically experienced in consulting with respect to financial, accounting, and economic matters as they relate to the determination of damages in breach of contract and intellectual property disputes including patent infringement, trademark, and copyright matters similar to this matter." (Id. at ¶ 2). Mr. Rogers submitted his report on March 29, 2024. (Id. at 2).

On May 24, 2024, PainTEQ filed its Motion to Exclude Omnia's Damages Expert. (Doc. # 179). Omnia responded in opposition on June 14, 2024. (Doc. # 184). PainTEQ filed a supplement to its Motion on October 25, 2024. (Doc. # 216). On October 31, 2024, Omnia filed a motion to strike PainTEQ's supplemental filing (Doc. # 217), which PainTEQ responded to on November 14, 2024. (Doc. # 220). As the Court does not find the supplement persuasive, the Court denies Omnia's

3

motion to strike as moot, and will address the merits of PainTEQ's supplement. PainTEQ's Motion is ripe for review.

**II.  <u>Legal Standard</u>**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993), requires district courts to ensure that any scientific testimony or evidence admitted is both relevant and reliable. <u>See</u> <u>Id.</u> at 589–90. The <u>Daubert</u> analysis also applies to non-scientific expert testimony. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147 (1999). District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" <u>Rink v. Cheminova, Inc.</u>, 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony must show, by a preponderance of the evidence, that the testimony satisfies each requirement. Id.

**III. <u>Analysis</u>**

In its Motion, PainTEQ argues that certain opinions of Omnia's damages expert, Mr. Rogers, should be excluded under Rule 702. (Doc. # 179 at 1). Specifically, PainTEQ argues that Mr. Rogers's expert opinions on damages related to Omnia's patent, trademark, and copyright infringement are unreliable. (Id. at 7-24).

Since the filing of its Motion, the Court granted summary judgment for PainTEQ on Omnia's claims related to copyright infringement. (Doc. # 212). Accordingly, the Court denies the

portion of PainTEQ's Motion related to copyright infringement damages as moot.

As to the remaining portions of the Motion, Omnia argues in response that Mr. Rogers's expert opinions are sufficiently reliable to be admitted under Rule 702, and that PainTEQ's arguments are matters of weight rather than admissibility. (Doc. # 184 at 1). The Court partially agrees with PainTEQ, finding that Mr. Rogers's opinions on reasonable royalties damages for trademark infringement are unreliable, but concludes that the rest of PainTEQ's challenges go to the weight of the expert opinions rather than their admissibility.

A. **D232 Patent Infringement Claim**

PainTEQ argues that Mr. Rogers's opinions on reasonable royalties damages from the D232 Patent are unreliable because they lack a sufficient factual basis. According to PainTEQ, Mr. Rogers's opinions fail to properly apportion the cannula's impact on the overall LinQ™ procedure. (Doc. # 179 at 7-18). Omnia counters that Mr. Rogers's opinions contain sufficient factual basis, such that his calculation of a reasonable royalty rate is legally permissible. (Doc. # 184 at 3-13). The Court agrees with Omnia and denies the Motion in this respect.

"Upon a finding of [patent] infringement, 'the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'" Virnetx, Inc. v. Cisco Sys., Inc., 767 F.3d 1308, 1326 (Fed. Cir. 2014) (quoting 35 U.S.C. § 284).

"When a patent covers the infringing product as a whole, and the claims recite both conventional elements and unconventional elements, the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone." AstraZeneca AB v. Apotex Corp., 782 F.3d 1324, 1338 (Fed. Cir. 2015); see also Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1233 (Fed. Cir. 2014) ("[T]he patent holder should only be compensated for the approximate incremental benefit derived from his invention.").

"[S]uch apportionment can be done . . . through a thorough and reliable analysis to apportion the royalty rate. We have recognized that one possible way to do this is through a proper analysis of the Georgia-Pacific factors . . . . [T]he standard Georgia-Pacific reasonable royalty analysis takes account of the importance of the inventive contribution in

determining the royalty rate that would have emerged from the hypothetical negotiation." Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC, 879 F.3d 1332, 1348-49 (Fed. Cir. 2018) (internal quotations and citations omitted); see Georgia-Pac. Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc., 446 F.2d 295 (2d Cir. 1971) (listing the fifteen factors Courts should apply in determining a reasonable royalty rate that would result from the hypothetical negotiations).

"[S]ophisticated parties routinely enter into license agreements that base the value of the patented inventions as a percentage of the commercial products' sales price. There is nothing inherently wrong with using the market value of the entire product, especially when there is no established market value for the infringing component or feature, so long as the multiplier accounts for the proportion of the base represented by the infringing component or feature." Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1339 (Fed. Cir. 2009); see also Exmark Mfg., 879 F.3d at 1348 ("So long as [Plaintiff] adequately and reliably apportions between the improved and conventional features of the accused [item],

using the accused [item] as a royalty base and apportioning through the royalty rate is an acceptable methodology.").

Mr. Rogers calculated reasonable royalties as a basis for damages by applying the hypothetical negotiation framework set forth by Georgia-Pacific. (Doc. # 183 at Ex. I at ¶ 74). He identified PainTEQ's revenues from the beginning of 2021 through the third quarter of 2023 as the royalty base. (Id. at ¶ 75). For comparable licenses, he started with the royalty rate used by Orthocision and Omnia in their licensing agreement, which is three percent. (Id. at ¶ 79-81). He then searched for comparable third-party licensing agreements on ktMine, a royalty database, and winnowed down his results to fifteen licensing agreements. (Id. at ¶ 83-86). He first filtered his search for "surgical and medical instruments and apparatus" and "orthopedic, prosthetic, and surgical appliances and supplies." (Id. at ¶ 83). Next, he filtered for agreements which focused upon trademarks, patents, and copyrights. (Id. at ¶ 84). He then filtered out agreements for sublicenses, licenses that were non-North American, and agreements that were not based on manufacturing or process intangibles. (Id. at ¶ 85). From this group, he identified fifteen agreements which related to intellectual property similar to that of Omnia's. (Id. at ¶ 88).

9

He then applied the fifteen <u>Georgia-Pacific</u> factors. (<u>Id.</u> at ¶ 92). He found that five of the factors favored Omnia's bargaining position as against PainTEQ, and that the rest of the factors were either inapplicable or had a neutral impact. (<u>Id.</u>). From this, he concluded that Omnia would receive a four percent royalty from PainTEQ, which was at the higher end of the median of royalty rates of the identified comparable licenses. (<u>Id.</u>).

As an initial matter, the Court finds that Mr. Rogers properly relied upon the entire market sales of the LinQ™ procedure as the royalty base. As PainTEQ asserts, the "LinQ surgical procedure is based on a system that includes at least four different surgical instruments and an allograft implant, among other components." (Doc. # 179 at 9). The surgical canula, which contains elements that allegedly infringe upon Omnia's D232 Patent, is one of those surgical instruments. (<u>Id.</u>). PainTEQ seemingly concedes that the canula was never sold as an individual item. (<u>Id.</u>). Accordingly, Omnia may properly rely upon the entire market sales of the LinQ™ procedure as its royalty base. <u>See</u> <u>Lucent Techs., Inc.</u>, 580 F.3d at 1339 ("There is nothing inherently wrong with using the market value of the entire product, especially when there is no established market value for the infringing component

10

or feature, so long as the multiplier accounts for the proportion of the base represented by the infringing component or feature.").

On this point, PainTEQ filed a supplement regarding decisions by the USPTO which supposedly further demonstrate the novelty of the LinQ™ procedure. (Doc. # 216). PainTEQ believes this provides further support for its claim that Mr. Rogers incorrectly used the entire market sales as his royalty base. (Id.). However, these decisions do not change the fact that the canula was never sold as an individual item. It is that fact that allows Mr. Rogers to rely upon the entire market sales of the LinQ™ procedure as the royalty base. See Lucent Techs., Inc., 580 F.3d at 1339 ("There is nothing inherently wrong with using the market value of the entire product, especially when there is no established market value for the infringing component or feature, so long as the multiplier accounts for the proportion of the base represented by the infringing component or feature."). The Court concludes that the supplement filed by PainTEQ is unpersuasive. Accordingly, the Court denies as moot Omnia's motion to strike the supplement. (Doc. # 217).

Relatedly, the Court also finds PainTEQ's argument that Mr. Rogers's opinions on reasonable royalties are

inadmissible because his damages calculation includes utility patents which are no longer at issue in this litigation to be factually incorrect. (Doc. # 179 at 11–12). Mr. Rogers's calculations of patent infringement damages only include design patent infringement. (Doc. # 183 at Ex. I at ¶ 93). The section on reasonable royalties for patent infringement makes clear that its damages calculations apply "should the Court determine that PainTEQ is liable for design patent infringement." (Id.). Accordingly, the Court finds no merit in PainTEQ's argument that the expert opinions impermissibly include damages for utility patent infringement.

Next, the Court finds that Mr. Rogers's initial step of calculating a reasonable royalty rate by identifying comparable licenses is appropriate. See Ericsson, Inc., 773 F.3d at 1227 ("This court has recognized that licenses may be presented to the jury to help the jury decide an appropriate royalty award."). Mr. Rogers began his analysis by identifying Omnia's licensing agreement with Orthocision, whereby Orthocision received a 3% royalty on Omnia's sales, as a benchmark. (Doc. # 183 at Ex. I at ¶ 79–81). Such a starting point is appropriate. See Georgia-Pac. Corp., 318 F. Supp. at 1120 (listing an appropriate consideration as "[t]he royalties received by the patentee for the licensing of the

12

patent in suit, proving or tending to prove an established royalty").

The Court finds that Mr. Rogers's next step, using an electronic database to identify comparable licenses, is permissible. He used ktMine, a royalty database, to identify fifteen licenses, based upon a variety of search parameters, which he deemed to contain comparable intellectual property to that of Omnia's. (Doc. # 183 at Ex. I at ¶ 73-86). Mr. Rogers's choice to use ktMine, as well as his detailed approach in filtering through the results, represented a proper method to identify comparable licenses. See StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc., No. 8:13-cv-2240-VMC-MAP, 2015 WL 3824170, at 10-12 (M.D. Fla. June 19, 2015) (approving expert's usage of ktMine to identify comparable licenses, and his filtering of over 100,000 license agreements down to seven agreements which he deemed comparable); Open Sea Distribution Corp. v. Artemis Distribution, LLC, 692 F. Supp. 3d 1151, 1239-44 (M.D. Fla. 2023) (approving expert's usage of ktMine to identify twenty comparable licenses).

The Court also finds that PainTEQ's assertions that the fifteen identified licenses are not sufficiently comparable to the facts of the case go to weight, rather than

13

admissibility. PainTEQ raises a host of attacks on the licenses identified as comparable by Mr. Rogers. (Doc. # 179 at 12-15). Omnia needs only to show that the licenses possess "baseline comparability," Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc., 967 F.3d 1353, 1374 (Fed. Cir. 2020), which can be established through the expert providing "reasonable and specific explanations for selecting the agreements he did." Bio-Rad Lab'ys Inc. v. 10X Genomics, Inc., 396 F. Supp. 3d 368, 388 (D. Del. 2019), aff'd in part, vacated in part, rev'd in part, 967 F.3d 1353 (Fed. Cir. 2020).

Mr. Rogers performed a detailed process, involving the use of several search terms to winnow an initial result pool of 809 agreements down to fifteen agreements. (Doc. # 183 at Ex. I at ¶ 84-88); see also (Doc. # 174-25 at 22:24-32:8) (containing Mr. Rogers's deposition testimony explaining his methods in identifying comparable licenses). Accordingly, the Court concludes that the search terms themselves, as well as Mr. Rogers's explanations, provide sufficient evidence for the Court to conclude that the comparable licenses are permissible. To the extent that PainTEQ's arguments contain any merit, "the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." Ericsson, Inc., 773 F.3d at 1227; see also

14

Virnetx, Inc., 767 F.3d at 1331 ("[T]hough there were undoubtedly differences between the licenses at issue and the circumstances of the hypothetical negotiation, the jury was entitled to hear the expert testimony and decide for itself what to accept or reject." (internal quotations omitted)).

The Court then finds that Mr. Rogers's application of the Georgia-Pacific factors was proper. PainTEQ claims that his application was improper because he "simply list[s] off the Georgia-Pacific factors, providing no factual support, and little, if any analysis as to each" and then "summarily" concludes whether the factors favor either party. (Doc. # 179 at 15). The Court disagrees. In his report, Mr. Rogers goes independently through each factor, providing an explanation for his conclusion on each applicable factor. (Doc. # 183 at Ex. I at 31-33). Each explanation focuses upon the facts and evidence of this case, tying the conclusion to those facts and evidence. (Id.). Through such an analysis, the Court concludes that Mr. Rogers sufficiently applied the Georgia-Pacific factors. See Open Sea Distribution Corp., 692 F. Supp. 3d. at 1244 (approving of the expert's brief analysis, when the expert "examine[d] the Georgia-Pacific factors individually as applied to the circumstances and then analyze[d] whether and to what extent the reasonable royalty

rate should deviate from the median derived from the twenty licensing agreements").

PainTEQ also argues that Mr. Rogers cannot opine on a proper disgorgement of PainTEQ's profits because Mr. Rogers fails to identify an "article of manufacture" and then fails to limit his profits calculation by an "article of manufacture." (Doc. # 179 at 16-18). As Omnia points out, PainTEQ's argument is legally incorrect (Doc. # 184 at 11-13), and the Court already reached this conclusion in its order on PainTEQ's motion for summary judgment. (Doc. # 212 at 32-33).

"Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties." 35 U.S.C. § 289. "[T]he term 'article of manufacture' is broad enough to embrace both a product sold to a consumer and a component of that product, whether sold separately or not. Thus, reading 'article of

16

manufacture' in § 289 to cover only an end product sold to a consumer gives too narrow a meaning to the phrase." <u>Samsung Elecs. Co. v. Apple Inc.</u>, 580 U.S. 53, 62 (2016) (quoting 35 U.S.C. § 289).

As explained in depth in the Court's order denying this argument on summary judgment, PainTEQ was including the accused canula within the LinQ™ procedure. (Doc. # 212 at 32-33); <u>see also</u> (Doc. # 183-4 at 100:13-16). Accordingly, the canula is an article of manufacture and Omnia may validly claim a disgorgement of PainTEQ's profits from its sales of the LinQ™ procedure. <u>See</u> <u>Samsung</u>, 580 U.S. at 62 ("Article of manufacture is broad enough to embrace both a product sold to a consumer and a component of that product." (internal quotations omitted)).

**B. <u>Trademark Infringement</u>**

PainTEQ argues that Mr. Rogers's opinions on damages for trademark infringement should be excluded because he does not provide a basis to claim all of PainTEQ's revenues as the royalty base and his identified comparable licenses are unreliable. (Doc. # 179 at 18-21). Omnia counters that Mr. Rogers's royalty base was proper and that PainTEQ entirely ignores the low burdens of proof. (Doc. # 184 at 13-17). The Court partially agrees with PainTEQ. It excludes Mr. Rogers's

opinions on reasonable royalties, but finds that his opinions on profit disgorgement and lost profits are admissible.

Regarding reasonable royalties, the Court finds that PainTEQ's arguments regarding Mr. Rogers's assumption of liability are without merit. PainTEQ argues that Mr. Rogers's opinion is inadmissible because his damages calculations fail to explain why he assumed causation and liability. (Doc. # 179 at 19-20). PainTEQ is correct factually, as Mr. Rogers does not provide any such explanation. (Doc. # 183 at Ex. I at 41-51). However, Mr. Rogers did not have to provide an explanation to make his opinions admissible because he can assume liability. See Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC, No. 09-61490-CIV, 2011 WL 2295269, at *3 (S.D. Fla. June 8, 2011) ("An expert witness, however, may assume liability for purposes of calculating damages."); Platypus Wear, Inc. v. Clarke Modet & Co., No. 06-20976-CIV, 2008 WL 4533914, at *6 (S.D. Fla. Oct. 7, 2008) ("A Daubert motion is an improper vehicle in the proceedings to adjudicate the validity of . . . the legal premise of the expert's opinion."). Accordingly, the Court finds that Mr. Rogers's assumption of liability does not render his expert opinion inadmissible.

However, the Court finds that Mr. Rogers's opinions on reasonable royalties are unreliable because he provides little to no explanation for his application of the comparable third-party licenses. Mr. Rogers re-uses his previously identified comparable third-party licenses for patent infringement damages for trademark infringement damages. (Doc. # 183 at Ex. I at ¶ 116). Of those licenses, only two contained agreements for trademark licenses. (Id.). Mr. Rogers offers no explanation for using these licenses beyond re-incorporating his explanation used in the patent section. (Id.). That explanation does not address what kinds of trademarks were involved, nor how they related to the underlying product being sold. (Id. at ¶ 83-89).

Here, PainTEQ is alleged to have infringed upon Omnia's PsiF mark by including it on the last page of its guide accompanying the sale of its product. (Doc # 174-33). Mr. Rogers's cursory explanation does nothing to explain how the usage of the trademarks within his comparable third-party licenses is similar to PainTEQ's usage of the PsiF mark. Accordingly, the Court concludes that these third-party licenses do not provide a reliable benchmark for a proper royalty rate. See Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1565 (11th Cir. 1986) (holding that for trademark

infringement damages, "plaintiff may recover upon a showing of the extent of damages as a matter of just and reasonable inference, although the result may be only an approximation" (citing Story Parchment Company v. Paterson Parchment Paper Company, 282 U.S. 555, 563 (1931))). Given Mr. Rogers's reliance upon these licenses in reaching his conclusions on reasonable royalties, the Court excludes his expert opinions on reasonable royalties.

In contrast, the Court finds that Mr. Rogers's opinions on lost profits and disgorgement of profits are admissible. PainTEQ asserts that the opinions fail to "limit these calculations actually caused or profits gained by the dissemination" of the infringing guides, and instead improperly base the calculations off all sales of the LinQ™ procedure. (Doc. # 179 at 21). This argument misapplies the relevant law.

"The Lanham Act permits recovery of profits because actual damages are often difficult to prove. It shifts the burden of proving economic injury off the innocent party, and places the hardship of disproving economic gain onto the infringer." Hard Candy, LLC v. Anastasia Beverly Hills, Inc., 921 F.3d 1343, 1354 (11th Cir. 2019) (internal quotations omitted). "The statute does so by expressly providing that

20

'the plaintiff shall be required to prove defendant's sales only,' while the 'defendant must prove all elements of cost or deduction claimed against its profits.'" Id. at 1355 (quoting 15 U.S.C. § 1117(a)). "So, when a plaintiff seeks an accounting and disgorgement of profits as a remedy for trademark infringement, the focus is entirely on the alleged infringer's gain; the plaintiff is not required to present any evidence of particular financial harm that it suffered so as to justify legal redress." Id.

While PainTEQ is correct that Mr. Rogers's opinions on lost profits and disgorgement of profits do not limit the calculations within PainTEQ's total profits (Doc. # 183 at Ex. I at 47-51), that lack of limitation was entirely permissible. To establish disgorgement or lost profits, Omnia needs only to present PainTEQ's total profits, and then it is PainTEQ's burden to establish what costs should be deducted from those total profits. See Hard Candy, LLC, 921 F.3d at 1355 ("[T]he plaintiff shall be required to prove defendant's sales only, while the defendant must prove all elements of cost or deduction claimed against its profits." (internal quotations omitted)). Therefore, it is entirely permissible that Omnia's expert only relied upon PainTEQ's total sales.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Plaintiff PainTEQ, LLC's Motion to Exclude Omnia's Damages Expert (Doc. # 179) is **GRANTED** in part and **DENIED** in part.

(2)  Omnia Medical, LLC's expert opinions on reasonable royalties it could recover as a form of damages for trademark infringement are excluded.

(3)  Omnia Medical, LLC's Motion to Strike PainTEQ's Supplement to its Motion to Exclude Omnia's Damages Expert (Doc. # 217) is **DENIED** as moot.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 20th day of November, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE