UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAINTEQ, LLC,

    Plaintiff,

v.                              Case No. 8:20-cv-2805-VMC-AAS

OMNIA MEDICAL, LLC,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon Plaintiff and Counterclaim-Defendant PainTEQ, LLC's Motion for Reconsideration, filed on November 13, 2024. (Doc. # 219). Defendant and Counterclaimant Omnia Medical, LLC responded in opposition on November 22, 2024. (Doc. # 222). For the reasons set forth below, the Motion is denied.

**I. Background**

This case has a long procedural and factual history, which the Court has recited in its multiple prior orders. The Court entered its order granting in part and denying in part PainTEQ's motion for partial summary judgment on October 21, 2024. (Doc. # 212). Rather than repeat the history of this case and the Court's ruling, the Court incorporates by

1

reference the background and discussion contained within that order. (Id.).

On November 13, 2024, PainTEQ filed its Motion seeking reconsideration of several of the Court's rulings in its order on PainTEQ's motion for partial summary judgment. (Doc. # 219). Omnia opposes the Motion. (Doc. # 222). The Motion is ripe for review.

## II. Legal Standard

"Federal Rules of Civil Procedure 59(e) and 60 govern motions for reconsideration." Beach Terrace Condo. Ass'n, Inc. v. Goldring Invs., No. 8:15-cv-1117-VMC-TBM, 2015 WL 4548721, at *1 (M.D. Fla. July 28, 2015). "The time when the party files the motion determines whether the motion will be evaluated under Rule 59(e) or Rule 60." Id. "A Rule 59(e) motion must be filed within 28 days after the entry of the judgment." Id. "Motions filed after the 28-day period will be decided under Federal Rule of Civil Procedure 60(b)." Id. Here, the Motion was filed within 28 days of the entry of judgment, so Rule 59 applies. "The only grounds for granting a Rule 59 motion are newly discovered evidence or manifest errors of law or fact." Anderson v. Fla. Dep't of Envtl. Prot., 567 F. App'x 679, 680 (11th Cir. 2014) (quoting Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007)).

Granting relief under Rule 59(e) is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." United States v. DeRochemont, No. 8:10-cr-287-SCB-MAP, 2012 WL 13510, at *2 (M.D. Fla. Jan. 4, 2012) (citation omitted). Furthermore, "a Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Michael Linet, Inc. v. Vill. of Wellington, 408 F.3d 757, 763 (11th Cir. 2005).

### III. Discussion

PainTEQ asserts that the Court erred in three of its rulings: its ruling on whether Omnia may obtain PainTEQ's profits from the LinQ procedure under § 289; its ruling on whether the LaNeve Patent is prior art to the D232 Patent; and its ruling on infringement of the D232 Patent. (Doc. # 219). The Court will analyze each of these arguments in turn.

#### A. The Court's § 289 Ruling

PainTEQ claims that the Court misapplied Samsung Elecs. Co. v. Apple Inc., 580 U.S. 53, 62 (2016), resulting in the incorrect conclusion that Omnia may recover PainTEQ's profits derived from its LinQ procedure. (Doc. # 219 at 2-7). In the order, the Court found that the plain language of § 289 allows plaintiffs to recover damages when their design patents have

3

been applied to "articles of manufacture." (Doc. # 212 at 32) (citing 35 U.S.C. § 289). The Court then found that, per Samsung, an "article of manufacture" need not be an end-product that is sold directly to consumers. (Id.) (citing Samsung, 580 U.S. at 62). PainTEQ does not object to either of these conclusions, but instead objects to the Court's conclusion that the accused surgical canula is an article of manufacture within the larger LinQ procedure, such that Omnia may claim damages for the sales of the LinQ procedure. (Doc. # 219).

PainTEQ claims that the accused canula is a "unitary object," such that Omnia may only obtain damages under § 289 for sales of the canula itself. (Id. at 3). As an initial matter, the Court finds that PainTEQ did not raise this argument in its motion for partial summary judgment based upon § 289. (Doc. # 174 at 32-33). Accordingly, this argument cannot be the basis for relief under Rule 59(e). See Michael Linet, Inc., 408 F.3d at 763 ("[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.").

Even still, PainTEQ misrepresents the holding in Samsung and extrapolates dicta to reach a legally incorrect

4

conclusion. In Samsung, the question resolved by the Supreme Court was "whether, in the case of a multicomponent product, the relevant 'article of manufacture' must always be the end product sold to the consumer or whether it can also be a component of that product." 580 U.S. at 59. Samsung involved patented designs that were each separate components of a larger end-product — an "electronic device" and a "graphical user interface for a display screen" that were part of a smartphone. Apple Inc. v. Samsung Elecs. Co., Ltd., 786 F.3d 983, 989 (Fed. Cir. 2015). The Supreme Court held that Apple could obtain damages based upon the application of its design patents within components of Samsung's end-product smartphone. See 580 U.S. at 59 ("[T]he term 'article of manufacture' is broad enough to embrace both a product sold to a consumer and a component of that product, whether sold separately or not. Thus, reading 'article of manufacture' in § 289 to cover only an end product sold to a consumer gives too narrow a meaning to the phrase.").

Here, the accused canula is similarly one component within PainTEQ's LinQ procedure. Accordingly, Samsung dictates that Omnia may recover damages from sales of the LinQ procedure. Id.

5

PainTEQ's repeated assertion that the fact that the accused canula was not sold as an individual item frees it from liability under § 289 is directly contrary to Samsung's holding. (Doc. # 219 at 3-4). PainTEQ misappropriates the following statement from Samsung to argue its case: "In the case of a design for a single-component product, such as a dinner plate, the product is the 'article of manufacture' to which the design has been applied." 580 U.S. at 55. Absent from PainTEQ's analysis is incorporation of the following sentence: "In the case of a design for a multicomponent product, such as a kitchen oven, identifying the 'article of manufacture' to which the design has been applied is a more difficult task." Id. The key distinction here is that a dinner plate is sold on its own, whereas a canula is one component of a larger, multicomponent surgical device, and is not sold on its own. See Apple Inc. v. Samsung Elecs. Co., No. 11-CV-01846-LHK, 2017 WL 4776443, at *11 (N.D. Cal. Oct. 22, 2017) (adopting the following factor as part of its analysis: "[t]he physical relationship between the patented design and the rest of the product, including whether the design pertains to a component that a user or seller can physically separate from the product as a whole, and whether the design is embodied in a component that is manufactured separately from

6

the rest of the product, or if the component can be sold separately" (internal quotations omitted)). Therefore, the Court correctly followed <u>Samsung</u>'s guidance that as a component of the multi-component LinQ procedure, infringement by the accused canula entitled Omnia to claim damages from sales of the LinQ procedure.

The Court concludes that this portion of PainTEQ's Motion is both procedurally improper and without merit.

**B. The Court's Ruling on Prior Art**

PainTEQ argues that the Court applied an incorrect legal standard to determine the priority date of the D232 Patent, such that the Court erroneously concluded that the LaNeve Patent is not prior art to the D232 Patent. (Doc. # 219 at 7-11). Specifically, PainTEQ claims that the Court applied an improper "obviousness" standard based upon a misapplication of <u>In re Daniels</u>, 144 F.3d 1452 (Fed. Cir. 1998). (Doc. # 219 at 7). The Court's conclusion that PainTEQ cannot establish as a matter of law that the LaNeve Patent is prior art to the D232 Patent remains correct.

In its prior order, the Court applied the following standard from <u>In re Daniels</u>: "In arguing that the later application is a continuation of the earlier application, 'the applicant does not have to describe exactly the subject

7

matter claimed . . . , the description must clearly allow persons of ordinary skill in the art to recognize that [the applicant] invented what is claimed.'" (Doc. # 212 at 13-14) (quoting In re Daniels, 144 F.3d at 1456). Applying this standard, the Court evaluated the similarities between the 757 Patent, a patent issued in 2015 which the D232 Patent claims to be a continuation-in-part of, and the D232 Patent to determine whether the D232 Patent may validly claim priority to the 757 Patent. (Id. at 14-16).

PainTEQ now asks the Court to re-consider its application of In re Daniels. (Doc. # 219 at 7). PainTEQ argues that the Court failed to follow the following principle from In re Daniels: "[i]t is the drawings of the design patent that provide the description of the invention . . . . [W]hen an issue of priority arises under § 120, one looks to the drawings of the earlier application for disclosure of the subject matter claimed in the later application." 144 F.3d at 1456. PainTEQ argues that In re Owens provides further clarification of In re Daniels, holding that "[t]he patentee in Daniels did not introduce any new unclaimed lines, he removed an entire design element. It does not follow from Daniels that an applicant, having been granted a claim to a particular design element, may proceed to subdivide that

element in subsequent continuations however he pleases." 710 F.3d 1362, 1367-68 (Fed. Cir. 2013).

The Court finds that PainTEQ misconstrues the Court's analysis and that PainTEQ still has not established as a matter of law that the D232 Patent cannot claim priority to the 757 Patent. Viewing the side-by-side comparisons provided by PainTEQ (Doc. # 219 at 9), the D232 Patent removes the stop collar device and also removes small indentations on the sides of the canula that were present in the 757 Patent. Removing elements in this manner is permissible to meet the written-description standard. See In re Owens, 710 F.3d at 1367-68 (holding that removing an element from a prior design does not negate the later design's ability to claim priority to that prior design).

PainTEQ also argues that the D232 Patent adds a "round collar." (Doc. # 219 at 10). However, this assertion is not definitive based upon the Court's view of the D232 Patent; rather, a reasonable juror could conclude that the round collar is what is left by removing the stop collar device from the 757 Patent.

PainTEQ next asserts that the D232 Patent adds a longer barrel and asymmetrical tangs not found in the 757 Patent. (Id.). The Court disagrees. A reasonable juror could find

that the barrel length and tangs of the D232 Patent are similar enough to the barrel length and tangs in the 757 Patent to conclude that the D232 Patent still derives from the 757 Patent. See In re Daniels, 144 F.3d at 1456 ("[T]he applicant does not have to describe exactly the subject matter claimed . . . , the description must clearly allow persons of ordinary skill in the art to recognize that [the applicant] invented what is claimed."). Accordingly, the Court concludes that PainTEQ fails to establish as a matter of law that the D232 Patent cannot claim priority to the 757 Patent. See Martek Biosciences Corp. v. Nutrinova, Inc., 579 F.3d 1363, 1369 (Fed. Cir. 2009) ("Whether the written description requirement is met is a question of fact."). As the D232 Patent can then claim priority to the 757 Patent's issue date of 2015 (Doc. # 174-6), LaNeve cannot as a matter of law be prior art to the D232 Patent because it claims priority to 2019. (Doc. # 174-1).

    **C. The Court's Ruling on Design Patent Infringement**

PainTEQ asserts that the Court conducted a legally incorrect analysis of whether the accused canula infringes upon the D232 Patent. (Doc. # 219 at 11-14). PainTEQ claims that design patent infringement analysis proceeds in two stages, and that the Court failed to apportion its analysis

10

in this manner. (Id.). PainTEQ misconstrues the Court's analysis.

The Court's analysis followed the same two stages that PainTEQ proposed in its motion for summary judgment on this point. (Doc. # 174 at 19-20). The Court's first step was to identify if the "claimed and accused designs are sufficiently distinct and plainly dissimilar." (Doc. # 212 at 25) (quoting Ethicon Endo-Surgery, Inc. v. Covidien, Inc., 796 F.3d 1312, 1335 (Fed Cir. 2015)). The Court's next step was, assuming that the first step had been met, to "compar[e] the claimed and accused designs with prior art to identify differences that are not noticeable in the abstract but would be significant to the hypothetical ordinary observer familiar with the prior art." (Id.) (quoting Ethicon, 796 F.3d at 1335). This is the same legal framework that PainTEQ had asked the Court to apply in its initial motion, regardless of whether the Court termed it a "two-stage" analysis. (Doc. # 174 at 19-20).

PainTEQ then asserts that the Court's analysis of these two stages was improper. It claims that the Court defied precedent by "isolating the three ornamental elements of the D232 Patent" to determine the similarity between the D232 Patent and the accused canula. (Doc. # 219 at 12). This warps

11

the Court's analysis. As the Court noted (Doc. # 212 at 25-26), "[t]he trial court is correct to factor out the functional aspects of various design elements, but that discounting of functional elements must not convert the overall infringement test to an element-by-element comparison." Amini Innovation Corp. v. Anthony California, Inc., 439 F.3d 1365, 1372 (Fed. Cir. 2006); see also Crocs, Inc. v. Int'l Trade Comm'n, 598 F.3d 1294, 1306 (Fed. Cir. 2010) (considering whether a shoe design had been infringed based upon how the ornamental elements changed the "overall effects of the design"). The Court then explicitly "look[ed] at the overall design of the accused canula" and considered the impact of the patented elements on the "effect of the overall design." (Doc. # 212 at 26-27). Given this clear framing whereby the Court conducted its analysis based on the overall design rather than isolating the patented elements, the Court finds no basis for PainTEQ's claim that the Court erred.

PainTEQ next claims that the Court's analysis of prior art was legally incorrect. (Doc. # 219 at 13-14). Specifically, PainTEQ claims that the Court failed to focus upon the "shared design features" between the accused canula, the D232 Patent, and the prior art. (Id.). PainTEQ

12

misconstrues the Court's analysis. First, the Court noted that there are 53 figures contained within the "Schmeirer" design, and only one of these figures looks remotely like the D232 Patent or the accused canula. (Doc. # 212 at 28; Doc. # 174-11 at fig. 4). Second, the Court acknowledged that one figure contains a circular proximal end similar to that of the D232 Patent and accused canula. (Doc. # 212 at 28; Doc. # 174-11 at fig. 4). However, the figure does not clearly demonstrate the dimensions of the proximal end, nor the dimensions of the barrel. (Doc. # 174-11 at fig. 4). Therefore, the Court correctly concluded that one similarity within one figure of the prior art to one of the three ornamental elements of the D232 Patent is insufficient to establish noninfringement as a matter of law. (Doc. # 212 at 27-28).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff PainTEQ, LLC's Motion for Reconsideration (Doc. # 219) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 13th day of December, 2024.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE